[No. 22249.  Department Two.  May 19, 1930.]

THE STATE OF WASHINGTON, *Respondent,* v. A. L. HOLLISTER, *Appellant.*[1]

*W. C. Donovan,* for appellant.

*Chas. W. Greenough* and *Louis F. Bunge,* for respondent.

FULLERTON, J.—The appellant, Hollister, and one McLean, on a trial had before the court and a jury, were convicted of the crime of manufacturing intoxicating liquor with the unlawful intent to sell and dispose of the same. Hollister alone appeals.

The appellant, at the close of the state's case, moved for a directed verdict, basing his motion on the ground that there was not sufficient evidence to carry

[1]Reported in 288 Pac. 249.

the case to the jury. The court overruled the motion, and its action in that behalf constitutes the first error assigned.

Briefly, the evidence tends to show that a warrant was issued to the sheriff of Spokane county, authorizing the search of a certain building in the city of Spokane for intoxicating liquors. Two deputy sheriffs, members of the dry squad, were detailed to execute the warrant. They proceeded to the building described in the warrant, and found the entrance doors locked. Raps on the doors failed to arouse anyone, and the officers proceeded to unfasten a screen door which covered the main entrance door to the kitchen part of the house. While they were at work on the screen door, the defendant McLean opened both doors from the inside. The officers then entered the house, and, on making a search, found a still in operation in the basement of the house.

McLean was at once arrested and taken to the county jail by one of the officers. The other officer stayed at the place, and was later joined by two others. While waiting at the place, two telephone calls came in which one of the officers answered. The inquiry in each instance was for the appellant Hollister. Still later, the wife of the appellant came to the house, and entered at the kitchen door without knocking. In answer to the officers' questions, she gave a fictitious name and a home address different from that at which she actually resided. She had been at the place earlier in the day and had left her purse therein. This contained articles indicating its ownership, and she only admitted her true identity after being confronted with them.

It was shown that a garage had been recently constructed on the place, and further shown that the appellant had purchased the lumber necessary for its

construction, had hauled the lumber to the place, and that he and his co-defendant had performed the labor of erecting the garage.

The appellant came to the place shortly after dark on the same evening. He also entered the house at the kitchen door without giving an alarm of any kind, and was taken into custody by the officers. The officers relate conversations with him, which, while tending to show guilty knowledge of what was going on at the place, do not perhaps contain any admissions showing that he was in any way connected with the place or the still found therein.

The building in which the still was found is somewhat isolated, the nearest dwelling house being some two hundred fifty or three hundred feet distant. It was a two-story building of considerable size.

In the basement was found a considerable quantity of mash with a few sacks of corn sugar and a few sacks of grain of some kind. The still was in operation, and was, to use the language of one of the officers, "perking whiskey fairly well." There was a quantity of distilled liquors found which was described as moonshine whiskey.

While the appellant makes a somewhat extended argument in support of his assignment of error, we do not deem it necessary to follow him. Plainly, we think, there was here sufficient evidence to carry the question of his guilt to the jury.

Nor was the contention that the evidence was insufficient aided by the testimony submitted on the part of the appellant, a question he raised on his motion for a new trial. But it is enough to say of this that it was not in itself altogether harmonious, and that in our opinion it tends as a whole rather to strengthen than weaken the state's case. But, at best, it was only contradictory or explanatory of the testimony on the part

of the state, leaving the question of the appellant's guilt one for the jury.

It is next complained that the court erred in permitting the state's counsel to propound certain questions to the appellant, while he was under cross-examination, concerning his connection with other transactions relating to illicit dealing in intoxicating liquors. But we see nothing wrong in this. A defendant in a cause has no special privileges when he offers himself as a witness on his own behalf. His credit as a witness may be tested and his testimony impeached in the same manner and to the same extent as that of any other witness. While, under the constitution, he cannot be compelled to give evidence against himself, it is not to violate the rule to ask him concerning his connection with other offenses similar to that for which he is on trial. *State v. Melvern,* 32 Wash. 7, 72 Pac. 489; *State v. Peeples,* 71 Wash. 451, 129 Pac. 108.

In inquiries of this sort, it is true, the state is concluded by the answers of the witness. The inquiry being as to collateral matters, the state cannot afterwards show that the answers were untruthful. *State v. Spadoni,* 137 Wash. 684, 243 Pac. 854. In this instance, however, there was no violation of the latter rule. The state suffered the matter to rest on the answers of the witness. No effort was made to impeach his answer. Our case of *State v. Arnold,* 130 Wash. 370, 227 Pac. 505, is cited as authority to sustain the contention of the appellant. But in that case we find the following:

"It is further contended that the court erred in permitting the prosecuting attorney to question the appellant on cross-examination concerning his conduct with a certain woman in Seattle, and to ask that if, as a matter of fact, he was not, at least for a portion of the time, living with this same woman. The appellant's answer was in the negative and the matter was

not further pursued. In the first place, the testimony had shown the appellant was a married man and had a family, and we think the question was a proper one as tending to affect his credibility as a witness. See *Carr v. State,* 81 Ark. 589, 99 S. W. 831. In any event, there was no prejudice because the appellant answered that he had no such relation with the woman.''

Unquestionably, the privilege of inquiring into collateral matters on cross-examination can be abused, and our own cases furnish instances of its abuse. But these were instances where the witness was asked impertinent and suggestive questions, having no bearing upon the question at issue, and apparently for the purpose of discrediting him by mere suggestion. In this instance, the witness had testified in his direct examination as to his then occupation and as to the occupations in which he had been engaged prior thereto, questions which could have no other purpose than to show that his conduct had theretofore been that of the ordinary well-behaved citizen. Manifestly, to ask him concerning specific instances of meretricious conduct, which, if admitted, would refute his testimony, was not an abuse of privilege.

The judgment is affirmed.

MITCHELL, C. J., MAIN, FRENCH, and HOLCOMB, JJ., concur.