[No. 26055. Department Two. May 25, 1936.]

THE STATE OF WASHINGTON, *Respondent,* v. J. H. SEXSMITH, *Appellant.*[1]

---

[1]Reported in 57 P. (2d) 1249.

*H. E. T. Herman, Richard S. Munter,* and *Joseph J. Lavin,* for appellant.

*Ralph E. Foley* and *Leslie M. Carroll,* for respondent.

BEALS, J.—The defendant was informed against by an information, the charging portion of which reads as follows:

"That the said defendant, J. H. Sexsmith, in the state of Washington, county of Spokane, on or about the 18th day of November, 1933, then and there being, and then and there having in his possession, custody and control as pledgee, trustee and bailee of Frank Miller personal property, to-wit: Five hundred shares of Jack Waite mining stock, the property of and belonging to Frank Miller, and of the value of one hundred twenty-five (125) dollars, did then and there wilfully, unlawfully and feloniously secrete, withhold

and appropriate the same to his own use, with intent to deprive and defraud the owner thereof."

The state contends that the defendant was guilty of the crime of larceny under the following portion of the statute defining that offense (Rem. Rev. Stat., § 2601 [P. C. § 8944]):

"Every person who, with intent to deprive or defraud the owner thereof— . . .

"(3) Having any property in his possession, custody or control, as bailee, factor, pledgee, servant, attorney, agent, employee, trustee . . . shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto; . . .

"Steals such property and shall be guilty of larceny."

After a plea of not guilty, defendant's trial resulted in a verdict of guilty as charged, and from judgment and sentence upon this verdict, the defendant has appealed.

Error is assigned upon the refusal of the trial court to set the verdict aside, as contrary to the law and the evidence; upon the refusal of the trial court to admit certain testimony offered by appellant; upon the ruling of the trial court that the prosecuting attorney had not been guilty of prejudicial misconduct entitling appellant to a new trial; upon the giving of certain instructions to which appellant excepted; and finally, upon the denial of appellant's motion for a new trial.

In the first place, appellant contends that the verdict is contrary to the law and the evidence, and that the trial court should have set the same aside. It appears that, during the month of September, 1933, Frank Miller, the prosecuting witness, requested of appellant a loan of two hundred fifty dollars. At the time of the consummation of the deal, appellant signed a "Buyer 30 day contract" in the following form:

348

"Spokane, Washington, Sept. 14, 1933
"THIS IS A
"BUYER 30  ⎫
"SELLER......⎭ day-contract.

"FOR VALUE RECEIVED, I have this day sold to Frank Miller 1500 shares of the stock of Jack Waite Mining Co. at the rate of............ per share, to-wit: The sum of Two Hundred Fifty Seven & Half Dollars, which amount he agrees to pay to the said J. H. Sexsmith, or order, on or before 30 days from this date, and agrees to keep the stock securing this note given for purchase hereof margined ten per cent below the price bid on the floor of the Standard Stock Exchange of Spokane, at any session thereof, and hereby agrees to pay said margins to above payee, or Treasurer of the Standard Stock Exchange of Spokane, immediately after being called for such margins by above payee.

"The said stock is to remain in the hands of said J. H. Sexsmith, as collateral security for this obligation, with authority to transfer, hypothecate, or use the same in whole or in part. Upon non-performance of this promise or any detail thereof, it is understood the said J. H. Sexsmith may sell the said stock at Standard Stock Exchange or either private or public sale without advertising the same or giving the above named purchaser any notice, applying the net proceeds toward the payment of this note, including interest at 12 per cent per annum, from maturity hereof, and accounting to the above named purchaser for the surplus, if any, and it is further agreed between the parties hereto, that any equity which may exist in this contract shall be applied to and used as an offset against any impaired contract existing between said parties.

"This contract is not transferable without the consent of J. H. Sexsmith.          J. H. SEXSMITH
"By J. H. Sexsmith
"$257.50.  Due Oct. 14, 1933.''

Frank Miller signed a contract, similar in form save that the same recited that he had

" . . . this day purchased from J. H. Sexsmith 1500 Jack Waite shares of the stock of Jack Waite

Nos. 793-2647-2658 at the rate of............ per share, to-wit: The sum of Two Hundred Fifty Seven & Half Dollars.''

Each of the parties took the contract signed by the other, appellant later delivering to Miller the following receipt:

"Spokane, Wash., October 24, 1933.
"Received of Frank Miller 500 J. Waite No. 1595 additional collateral on B.30—of Oct. 14.
"J. H. SEXSMITH
"By J. H. S.''

The gist of the offense with which appellant was charged consists of his alleged embezzlement of the stock represented by certificates Nos. 793 and 2647, for four hundred and one hundred shares, respectively, of Jack Waite stock. It appears that appellant transferred the stock to one Ben Stimmel, and thereafter took from Mr. Stimmel re-delivery of the two certificates above referred to. Later, appellant and Stimmel signed the following writing, prepared by Miller:

"May 9, 1934.
"I hereby confirm to H. F. Miller that I owe him (2000) shares, Two Thousand shares of Jack Waite Mining Co. stock, which I received from J. H. Sexsmith as collateral for a loan of $250.00.
"J. H. SEXSMITH                    B. E. STIMMEL''

Appellant contended on the trial that he signed this document merely as a witness.

The evidence indicates that Miller paid appellant some money as interest, and that November 15, 1933, Miller advised appellant that he was ready to repay the loan and wanted his stock. Appellant put Miller off from time to time, and when the latter found that his two certificates of stock above described had been purchased on the open market by one Katzer, he complained to the prosecuting attorney, with the result that the information herein was filed.

■ Appellant contended that in whatever he did he was entirely within his contract rights. The record clearly indicates that the transaction between appellant and Miller amounted to a loan from the former to the latter and the taking of security therefor. An issue of fact was presented, to be determined by the trier of the facts, and the trial court did not err in denying appellant's various motions for judgment in his favor as matter of law.

■ Upon cross-examination of Miller, appellant offered to prove that the witness had consulted different lawyers with the view of starting a civil action against appellant based upon the transaction which is the subject matter of this proceeding, and that no such suit was ever brought. The trial court properly refused to allow appellant to cross-examine along the line indicated.

■ Appellant attempted to introduce testimony to show the dealings of the prosecuting witness, himself, and Stimmel, in connection with a certificate for one thousand shares of the capital stock of the Jack Waite Company, which Miller had delivered to appellant at the time of the execution of the contracts above referred to. This was certificate No. 2658, referred to in the contract signed by Miller. The information charged appellant with larceny of five hundred shares, and on demand the state furnished a bill of particulars by which it limited the proof concerning the alleged larceny to certificates No. 793, for four hundred shares, and No. 2647, for one hundred shares.

While appellant was not charged with any offense in connection with certificate No. 2658, testimony offered by the prosecution was admitted over appellant's objection, the trial court being of the opinion that the state should be permitted to show the entire transaction between the parties. Appellant's then

counsel stated that, in view of the statement by the prosecuting attorney to the effect that, while the state wanted to show the entire transaction, no attempt would be made to prove that appellant was guilty of any criminal act save in connection with the two certificates aggregating five hundred shares, no objection would be made to the introduction of the offered testimony. Later, the court sustained the state's objection to testimony offered by appellant in connection with matters concerning which the state had been permitted to introduce evidence.

Whether or not the evidence so introduced by the prosecution was properly received, need not be determined. Appellant's counsel was not required to object thereto, but if the testimony was offered and received, appellant in his turn was entitled to introduce evidence explaining his contention as to the nature of the transaction. If the state desired, as it stated it did, to show the whole transaction, the same rule should apply to appellant. We hold that, in view of the evidence received in the state's case, the trial court improperly restricted appellant in his attempt to introduce evidence concerning matters in connection with which the state's witnesses had testified.

■ Appellant called several witnesses to testify that his reputation for honesty and integrity was good. On cross-examination, counsel for the prosecution asked one of these witnesses whether or not the witness had "in mind that in September, 1927, he [appellant] served ten days in jail for contempt of court." Although the witness expressed a willingness to answer, appellant's counsel objected. On this objection being overruled, the witness answered that he knew about the circumstances. After some further discussion of the matter, the subject was abandoned, for the time, without explanation.

It appears from evidence introduced later that September 1, 1927, appellant was committed to the county jail of Spokane county under a commitment which recites that appellant "was duly convicted of the crime of contempt for his admitted failure and neglect to comply with the decree of this court," and that he was sentenced "to be confined in the county jail in and for said county and state until he has purged himself of contempt." Under date September 10, 1927, the following order was entered:

"On this 10th day of Sept. 1927, this cause came regularly on for hearing by the Court on show cause order for contempt issued against defendant and the parties with counsel appearing before the court and after hearing the testimony and the showing therein by defendant the Court holds that said defendant is not guilty of contempt and it is hereby ordered that said defendant be forthwith discharged from custody.
"JOSEPH B. LINDSLEY, *Judge*."

From this order, it appears that appellant was not guilty of contempt; the order signed by the judge being, of course, of greater weight than the recitals in the commitment issued by the clerk. The two documents were admitted in evidence, but in such a manner as to probably create a false impression upon the jury. A man might be committed as for contempt upon facts which would have no bearing upon his honesty or integrity; but in the case at bar, it clearly appears that appellant was never adjudged in contempt, but on the contrary was declared not guilty.

No such record as that now under discussion should have been brought into the case, as it proves nothing, but might at the same time be prejudicial to the appellant. The court erred in overruling appellant's objection to the question which was propounded, the same not indicating anything concerning the reasons

upon which it was contended that appellant had served. a sentence for contempt of court.

Counsel for the state also cross-examined appellant's character witnesses as to whether or not they had in mind certain findings entered in an old action brought against appellant for divorce. It was stated that it had been found that appellant had "associated with other women." The language of the findings was not shown, and the question propounded was so vague as to be well-nigh meaningless. "Association" with persons might be, under some circumstances, a proper subject for the making of a finding by the court in an action for divorce, but at the same time the word does not carry the implication which counsel for the prosecution endeavored to give it. The cross-examination of appellant's witnesses in the manner and form conducted by the prosecution was objectionable, and should not have been allowed over appellant's objection.

For the errors referred to, the judgment appealed from is reversed, with instructions to the trial court to grant appellant's motion for a new trial.

MAIN, HOLCOMB, and BLAKE, JJ., concur.

MILLARD, C. J. (dissenting)—Not deeming any of the errors assigned as prejudicial, I am of the view that the judgment should be affirmed; therefore, I dissent.