[No. 26157. *En Banc.* August 20, 1936.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES KELLY *et al., Appellants.*[1]

[1]Reported in 60 P. (2d) 50.

302

*Edward H. Chavelle,* for appellants.

*Warren G. Magnuson* and *Albert D. Rosellini,* for respondent.

MAIN, J.—In the information upon which the defendants were tried, there were four counts. In the first count, James Kelly was charged with the crime of forcible rape, and Floyd Kelly, Sam Kelly and Ray Trimble were charged with being personally present and aiding and abetting. In the second count, Floyd Kelly was charged with rape, and James Kelly, Sam Kelly and Ray Trimble were charged with aiding and abetting. In the third count, Sam Kelly was charged with rape, and James Kelly, Floyd Kelly and Ray Trimble were charged with aiding and abet-

ting. In the fourth count, Ray Trimble was charged with rape, and James Kelly, Floyd Kelly and Sam Kelly were charged with aiding and abetting.

The cause went to trial against Floyd Kelly, James Kelly and Ray Trimble, Sam Kelly having disappeared after the commission of the crime with which he was charged, and at no time since having been apprehended. The trial resulted in verdicts finding Floyd Kelly and James Kelly guilty of the charge of rape, and also of aiding and abetting. Ray Trimble was found guilty of aiding and abetting, but not guilty of the charge of rape. From the judgment and sentence, Trimble did not appeal. James Kelly and Floyd Kelly have appealed.

There is no assignment of error as to the question of whether the evidence was sufficient to take the case to the jury, and for this reason the facts will only be stated in so far as it may appear to be necessary to an understanding of the questions for determination.

Mary Froggate and Ellen Johnson, both about twenty-six years of age, on the evening of November 5, 1934, went to a beer parlor in the business district of the city of Seattle. There, the girls danced and had some beer. The three Kellys and Ray Trimble came into the parlor. About one o'clock A. M., when the parlor closed, the girls left, and the Kellys and Trimble also left. When they got out on the street, some conversation occurred between them. As a result, the girls and two of the Kellys got into the front seat of a truck which was owned by Floyd Kelly, thinking that they were going to a roadhouse to dance, as they testified. The other two boys got into the rear of the truck. The girls say that, when they started, they did not know that the two boys were in the back part of the truck.

The truck was then driven by Floyd Kelly through the southern part of the city, stopping once for a supply of beer, and again for some gas, and proceeded to a dwelling house in what is referred to as West Seattle, which is some distance from the business section of the city. When the truck stopped in front of this house, one of the girls said that it did not look like a roadhouse or a dance hall. She was assured that the dance floor was in the basement. Thereupon the four of them went into the house, which contained four rooms, two of which were bedrooms. There was another house adjacent to this, with a space of approximately eight feet between. After the four boys and the two girls entered the house, they drank some beer. As to what took place thereafter, the evidence is in direct dispute.

In this case, all four of the young men were charged with having committed rape upon the complaining witness, Mary Froggate; that she was first taken into one of the bedrooms by Sam Kelly and was successively forced to have sexual intercourse with him and each of the others, one after another. She testified to her resistance and to screaming. In this, she is corroborated by the other girl, who was in the other bedroom, and Ray Trimble.

After remaining in the house two or three hours, the parties all left, and, when the truck reached a service station at Fourth avenue south and Spokane street, the girls asked to get out in order to go to a lavatory. After they got out, the truck moved on. When the girls got to the service station, they complained to the attendant that they had been assaulted. One of the girls opened her purse for the purpose of getting a nickel to telephone the police. When she did so, she discovered that the thirteen dollars in money which she had in her purse had been taken. The police

came, and with the girls they went out to the house from which the parties had just come. Floyd Kelly was arrested the next morning at the house in which they had been, it being a house in which he and his father resided, but the father, being a night watchman, was absent at night. James Kelly was subsequently arrested in the city of Seattle, and Ray Trimble in San Francisco.

As above stated, it is not claimed that the evidence was insufficient to take the question of the guilt of the appellants to the jury. In passing, it might be said that there was abundant evidence to sustain the verdicts of the jury.

When the trial opened, after the jury had been sworn, and about the time the first witness was called to the stand, owing to some laughing in the court room, the court uttered some words of disapproval in rather emphatic form, but did not make these remarks to the jury and did not comment upon any fact in the case. There is nothing in the remarks upon which error could be predicated. The court had a right to preserve proper order and decorum in the court room, and its remarks or conduct in performing this duty were not such as to discriminate against or prejudice the case of the accused. A similar occurrence took place in the case of *State v. Robertson,* 121 N. C. 551, 28 S. E. 59; the language there being more emphatic than it was in this case, and it was there held not to be error on the part of the court to have made the remarks.

It is next complained that the court unduly limited the cross-examination of the prosecuting witness and Miss Johnson. Each of the parties, upon the trial, was represented by a different attorney, and there was an understanding between the attorneys as

to the order in which they would cross-examine the witnesses. The trial court stated that it would not permit, in the cross-examination, "any repetition any further than it pertains to your own individual clients." This ruling was adhered to, the trial court not permitting the witnesses being taken over the same ground by each of the cross-examiners, except in so far as the individual client was concerned.

In this, there was no error. In the case of *People v. Godsey,* 334 Ill. 11, 165 N. E. 178, the same thing occurred, and the supreme court of that state held that it was not error.

It is well settled in this state, and many times stated in the cases, that the scope and extent of the cross-examination of a witness rest largely in the discretion of the trial court and will not be disturbed upon appeal, in the absence of a showing of abuse. *State v. Nolon,* 129 Wash. 284, 224 Pac. 932; *State v. Steik,* 161 Wash. 194, 296 Pac. 546. In support of this rule, there is no occasion to multiply the citation of sustaining authority.

When the complaining witness was being cross-examined, she was asked whether, before she entered the house, after she got out of the truck, she noticed "a residence about eight feet from the Kelly house." To this, there was an objection, which was sustained. It is claimed that this was an undue restriction upon the right of cross-examination. Waiving the technical objection to the question, in that it embodies a statement of fact which up to that time had not appeared in the evidence, and assuming that the question was proper to be answered, there was no error in this respect, because, subsequently, during the trial, it was made distinctly to appear, by evidence to which there was no objection, by a number of witnesses, that the

space between the two houses was approximately eight feet, and that the bedroom window of the other house was opposite the bedroom window of the room in which the complaining witness was when the crime was committed.

Attention is called to a number of other instances where it is claimed that the court erred in not permitting a wider latitude in the cross-examination. All of these have been examined and considered; but we do not find that the court at any time abused its discretion in refusing further cross-examination.

Some complaint is made because the attorney for Ray Trimble was permitted to cross-examine the two Kellys; but there cannot possibly be any error in this, as that attorney had a right to cross-examine any of the accused whom he was not representing.

Over objection, evidence was permitted as to the taking of the thirteen dollars in money from the purse of Miss Johnson, which Floyd Kelly admitted that he had done. That crime was closely associated with the crime for which the accused were being tried, and furnished evidence which was material and proper. Testimony connecting a defendant with another and distinct crime, if it is closely associated with the crime charged and furnishes evidence material to that crime, is admissible. *State v. McDonald,* 116 Wash. 668, 200 Pac. 326; *State v. Stevenson,* 169 Wash. 10, 13 P. (2d) 47.

It is said that the court allowed too wide a latitude in permitting evidence as to the complaint which the complaining witness and the other girl made to the service station operator and to the police. The rule is that the fact that the ravaged person made complaint after the occurrence may be shown in evidence, either by the testimony of the complaining witness or by the person to whom the complaint was made; but

that, under the rule, details or particulars of the complaint may not be related. *State v. Aldrick,* 97 Wash. 593, 166 Pac. 1130. In *State v. Griffin,* 43 Wash. 591, 86 Pac. 951, the rule stated was recognized, but was not applied owing to the particular facts in that case, which were entirely different from those here presented. The trial court recognized the rule stated, and in its rulings adhered to it.

█ Evidence was received covering the trip made by the officers with the girls to the house in which the assault had taken place; but this was not a violation of the rule not permitting the details or the particulars of the ravagement to be shown.

█ It is said that the court permitted evidence of other crimes which the two Kellys had previously committed, and of conduct which did not result in the conviction of a crime. Prior convictions of the accused may be shown for the purpose of affecting the weight of his testimony, either by the record thereof, or a copy of such record duly authenticated, or by other competent evidence, or upon cross-examination. Rem. Rev. Stat., § 2290 [P. C. § 8725]; *State v. Overland,* 68 Wash. 566, 123 Pac. 1011. It is said, however, that the court permitted conduct to be shown of which there had been no conviction. As to Floyd Kelly, the prior conduct was gone into upon his direct examination, and this opened the door for cross-examination upon the same matter. As to James Kelly, the cross-examination was largely without objection.

When a defendant takes the witness stand, he has no special privileges, and his credibility as a witness may be tested in the same manner and to the same extent as that of any other witness. *State v. Melvern,* 32 Wash. 7, 72 Pac. 489; *State v. Hollister,* 157 Wash. 4, 288 Pac. 249.

We have not covered, in detail, all of the minor contentions of the appellants, but they have been given consideration and, in our opinion, do not have any substantial merit.

The judgments appealed from will be affirmed.

ALL CONCUR.