[No. 33205. Department One. July 7, 1955.]

THE STATE OF WASHINGTON, *Respondent,* v. RALPH E. ANDERSON, *Appellant.*[1]

[1]Reported in 285 P. (2d) 879.

*Max Kosher* and *Victor Haglund*, for appellant.

*Tom A. Durham* and *Jack Rowles*, for respondent.

HAMLEY, C. J.—Ralph E. Anderson appeals from a judgment and sentence entered after his trial and conviction of the crime of robbery. The assignments of error relate to the admissibility and sufficiency of the evidence.

On the evening of May 6, 1952, the Kulshan tavern, in Bellingham, Washington, was robbed by two men. Rex Odell, the owner of the tavern, and Mrs. Elsie Carlson, an employee, were on duty at the time. After the men had left, Odell called the police.

Shortly thereafter, Odell spent considerable time at the Bellingham and Seattle identification bureaus, examining photographs, but found no picture of either robber. On Christmas morning, 1952, Odell saw one of the two robbers in the London cafe, at Everett. He gave this information to the Bellingham police when he returned to that city. In the fall of 1953, he was shown some more photographs by the Bellingham police, and selected two of them as being pictures of the two robbers. Shortly afterwards, in October, 1953, Odell identified appellant in a police lineup as one of the robbers. Mrs. Carlson and one of the customers who had been in the tavern on the night of the robbery similarly identified appellant.

Lyle Osgood, a relative of appellant by marriage, testified that appellant had a .32 caliber automatic pistol in the summer and fall of 1952. A police officer testified that, when appellant was taken into custody, he could not account for his whereabouts on May 6, 1952. He also testified that appellant at that time admitted that he had owned a .32 automatic, but stated that he had sold it.

Appellant took the witness stand in his own defense, and denied any participation in the robbery. He and several relatives gave testimony tending to establish the defense of alibi. Through other witnesses, and by cross-examination, he sought to show that the state's case was based upon mistaken identification. An additional witness was offered

to establish appellant's good reputation for truth and veracity and for being a law-abiding citizen.

Under appellant's first assignment of error, it is urged that the trial court erred in overruling appellant's objections to certain questions asked of appellant's character witness on cross-examination. It is contended that the primary purpose of this cross-examination was to discredit appellant by bringing before the jury specific and unrelated acts of misconduct on his part.

On direct examination, this witness, Gregory Kuehn, testified that appellant's reputation in the community for truth and veracity was good. He also testified that appellant had always been a law-abiding citizen "as far as I know." On cross-examination, the witness was asked if he had "heard" that appellant's immoral conduct with a certain woman relative had been one of the principal reasons why the woman's marriage had broken up. He was also asked if he had "heard" that appellant had, on a number of recent occasions, gone out with this woman and stayed with her all night. Finally, Kuehn was asked if he had "heard, or do you know" that appellant had, in the last few years, often been closely associated with professional gamblers and drunkards. The answers to these questions were favorable to appellant.

In this jurisdiction, character witnesses may be cross-examined as to their knowledge of particular acts of misconduct on the part of the person whose conduct is in issue, providing the primary purpose is to discredit the testimony of the character witness. *State v. Cyr*, 40 Wn. (2d) 840, 246 P. (2d) 480.

In the absence of the jury, the prosecuting attorney asked these and other questions of appellant, and obtained a ruling as to their admissibility. Objection to several in this series of questions was sustained, on the ground that they involved incidents of a nature similar to the robbery for which appellant was being tried. The court must have felt that the primary purpose of the excluded questions was to discredit appellant.

■ As to the questions which were permitted, the court, in the exercise of its discretion, apparently concluded that the primary purpose in asking them was to test the credibility of the character witness. Where this is the primary purpose, the fact that such questions also reflect upon the defendant's character does not require suppression of such questions. We are not convinced that the trial court abused its discretion. This assignment of error is therefore not well taken.

The second assignment of error raises the question of whether the trial court erred in permitting the state to discredit one of appellant's witnesses by means of cross-examination on a collateral issue.

Joe Burrows, called as a witness by appellant, testified, in effect, that he was present at the Kulshan tavern one night after appellant's arrest and release on bail, on which occasion Odell failed to identify appellant. In connection with this testimony, Burrows testified, on direct examination, that he was formerly an Everett policeman, and had left the force due to an injury sustained while in the line of duty. On cross-examination, he was asked if it were not a fact that he was discharged from the police force for reporting sick when he was not sick.

Appellant argues that this constituted cross-examination on a collateral issue, and therefore should have been excluded. He cites *O'Neil v. Crampton*, 18 Wn. (2d) 579, 140 P. (2d) 308.

■ The *O'Neil* case does not stand for the proposition for which appellant contends. The court there recognized, but held inapplicable, the rule that a witness cannot be interrogated with reference to matters irrelevant or collateral to the issue before the court, *and then be contradicted by the testimony of other witnesses or by other evidence*, in order that he and his testimony may be impeached. In such matters, the party cross-examining the witness is concluded by the answers given. *State v. Johnson*, 192 Wash. 467, 73 P. (2d) 1342; *Warren v. Hynes*, 4 Wn. (2d) 128, 102 P. (2d) 691.

In the instant case, there was no attempt to impeach the witness on a collateral issue by producing the testimony of other witnesses. The state rested on its cross-examination of the witness, and did not pursue the matter further.

 The extent of the cross-examination of a witness on matters immaterial to the issues being tried, or on irrelevant topics brought in to discredit the witness, is very largely one within the sound discretion of the trial court. *State v. Powers*, 155 Wash. 63, 283 Pac. 439.

Here, a special effort was made, on direct examination, to establish the credibility of the witness, by holding him out as a former member of the Everett police force who had been retired because of an injury sustained in the line of duty. Under the circumstances, we do not believe the trial judge abused his discretion in permitting the cross-examination in question.

The third assignment of error relates to certain questions which the state was permitted to ask one of its witnesses on rebuttal. This witness was Arthur Moreau, a Bellingham police officer.

Moreau was asked, on rebuttal, whether, in questioning appellant on two different occasions, he had inquired of appellant as to the latter's whereabouts on the night of the robbery. The witness replied that he had, and in response to further questions, stated that appellant could not tell where he was on that night.

Appellant argues, in effect, that these questions related to a purely collateral matter. It is apparently his contention that, since appellant had testified as to his whereabouts on the occasion in question, the state was concluded by his testimony, and could not produce contradictory rebuttal testimony.

 We do not agree. The subject-matter of these rebuttal questions was in no sense collateral. It pertained to appellant's defense of alibi. The objections to these questions were properly overruled.

Over objection, Moreau was also asked, on rebuttal, to tell of his conversation with appellant concerning the lat-

ter's marital life. Appellant told Moreau, according to the latter's testimony, that appellant and his wife did not get along very well, and that she had moved to Seattle so that she could be near her children. Appellant contends that this line of questions should have been suppressed, because the purpose was to contradict appellant on a collateral issue.

Both appellant and his wife had testified that, on the day of the robbery, they were at Everett together, at the home of his parents. They stated that the reason they remembered this was that, although Mrs. Anderson worked in Seattle from Wednesday to Sunday of each week, they were always together in Everett on her days off. In this connection, Mrs. Anderson testified that her husband is "very, very devoted."

Under these circumstances, these rebuttal questions did not pertain to a collateral issue, but to the primary issue of alibi.

Nor were they, as appellant contends, objectionable because they "tied in" with the evidence referred to above, tending to show that appellant was guilty of improper relations with another woman. Where such rebuttal questioning serves a valid primary purpose, the determination of whether it should be stopped because of its prejudicial effect in another direction lies within the sound discretion of the trial court. We do not believe that such discretion was abused in this case.

Over objection, Moreau was asked, on rebuttal, to tell of his conversation with appellant concerning the disposal of the latter's .32 automatic pistol.

Appellant's contention, that the purpose of this line of questioning was to contradict appellant on a collateral issue, is without merit. The proprietor of the tavern had testified that, at the time of the robbery, appellant brandished an automatic pistol. The rebuttal questioning was thus directly related to an indispensable element of the state's case—the identification of appellant as one of the robbers.

██ Nor can we agree that it was reversible error to permit the introduction of such testimony in rebuttal because it involved a matter which was a part of the state's case in chief. The admission or exclusion of evidence not strictly in rebuttal is a matter resting in the sound discretion of the trial court, the exercise of which is not subject to review except in cases of gross abuse. *Cogswell v. West Street & North End Elec. R. Co.*, 5 Wash. 46, 31 Pac. 411; *Bellingham v. Linck*, 53 Wash. 208, 101 Pac. 843; *Pylate v. Hadman*, 151 Wash. 245, 275 Pac. 559. Here, similar testimony had been given by the same witness, during the presentation of the state's case in chief. We are of the opinion that the trial court did not abuse its discretion in permitting the repetition of such testimony on rebuttal.

The fourth assignment of error brings into question the action of the state in adding the name of Mrs. Louise Williams to the list of witnesses after appellant had rested his case, and in permitting certain rebuttal testimony to be elicited from this witness.

Mrs. Williams' testimony was to the effect that she had been a customer in the Kulshan tavern on an evening late in the fall of 1953, and that she had seen Odell make a hurried exit from the tavern after serving four people in another booth.

This testimony tended to corroborate Odell's version of the incident which occurred in November, 1953, when appellant and three other persons entered the tavern as customers, for the purpose of determining if Odell would recognize appellant. The testimony of appellant was to the effect that there was no recognition. Odell testified that he recognized appellant and left the tavern to call the police. A police officer testified that he answered such a call.

██ In our view, this was proper rebuttal testimony, notwithstanding the fact that some evidence regarding this incident had been received during the state's case in chief. The prosecuting attorney advised the court that the state had no information concerning Mrs. Williams' connection with the transaction, until an hour prior to the offer of her

testimony. He also stated that this delay in discovering the witness was not due to any lack of diligence on the part of the state. There was no abuse of discretion in receiving her testimony.

 The final assignment of error questions the sufficiency of the evidence to support the verdict. In our opinion, the evidence was sufficient.

The judgment is affirmed.

SCHWELLENBACH, DONWORTH, WEAVER, and OTT, JJ., concur.

[1]Reported in 285 P. (2d) 874.