[No. 34285. Department One. ..May 8, 1958.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM MINOR DUREE, *Appellant.*[1]

[1]Reported in 324 P. (2d) 1074.

*Walthew, Warner & Keefe*, for appellant.

*Charles O. Carroll, Lawrence K. McDonell*, and *Joel A. C. Rindal*, for respondent.

HUNTER, J.—William Minor Duree was arrested in Seattle, Washington, on January 16, 1957. Thereafter, the prosecuting attorney of King county, Washington, filed a criminal information charging him with murder in the second degree, in that

"He, the said WILLIAM MINOR DUREE, in the County of King, State of Washington, on or about the 19th day of November, 1956, with a design to effect the death of one Marion Dixon, willfully, unlawfully and feloniously did then and there cut, stab and wound the said Marion Dixon, a human being, with a certain deadly weapon, to-wit: a knife, then and there held by him, the said WILLIAM MINOR DUREE, thereby mortally wounding the said Marion Dixon from which said mortal wounds the said Marion Dixon, there languished and died on the 29th day of November, 1956."

The case was tried to a jury. Briefly stated, the material facts which were brought forth during the trial are as follows:

Marion Dixon was a stabbing victim in a room of the Capitol Hotel on Jackson street in Seattle. He lived for ten days thereafter, and although physically able to name or identify the person who stabbed him, he refused to do so. Gerald S. Goldsmith and Verl Ray Halpaine, witnesses for the state, testified that they were present at the time Dixon was stabbed, and that the accused William Minor Duree was the person who committed the crime; that he stabbed Dixon in the chest with a butcher knife after an argument in the defendant's room. Dr. Wilson, the autopsy surgeon for the

county, testified that Dixon's death was due to an acute fibrinous pericarditis precipitated by a stab wound in the right chest. After the state rested, the defendant took the stand in his own behalf and denied that he had stabbed Dixon, or knew anything about the killing. On cross-examination, the state attacked the defendant's credibility by bringing out his previous criminal convictions.

At the conclusion of the trial, the case was submitted to the jury, which returned a verdict finding the defendant guilty of murder in the second degree, as charged. A judgment was entered in accordance with the verdict, and the defendant was sentenced to serve a maximum term of not more than thirty years in the state penitentiary. This appeal followed.

The appellant first assigns as error certain testimony given by a Seattle police officer, a witness for the state. The witness testified that he had discovered the victim and had arranged for his transportation to the King county hospital. Thereafter, he was asked:

"Q. Did you have anything further to do with this case? A. Not until about two weeks later. Q. And what did you do in connection with it at that time? A. I work in the same district and I saw Detective Manus and he had what we call a *mugg shot picture of a man* that he wanted picked up, and he showed me the picture at that time and asked me if I saw the man if I would notify him." (Italics ours.)

On cross-examination, he testified further:

"Q. You never did pick up the man whose picture you received? A. I never did see *the man* until yesterday actually." (Italics ours.)

The portion of the testimony which the appellant contends constituted "misconduct of the witness" was the reference to the "mugg shot" picture. This, he argues, placed his character in issue by interjecting into evidence an inference of a previous police record, thus placing the burden upon him to take the stand and waive his constitutional immunity against testifying. He relies upon the case of *State v. Devlin*, 145 Wash. 44, 258 Pac. 826 (1927).

The *Devlin* case is clearly distinguishable from the instant case upon its facts. In that case, the only witness identifying the accused testified that he saw the accused in jail and had seen a picture of him. On redirect examination, he was permitted to testify, *over objection,* that he saw the picture in "rogue's gallery" and to explain what he meant by "rogue's gallery." The defendant moved to strike the testimony, which motion was denied. Here, there was no objection or a motion to strike the testimony. Further, the witness did not state that the picture was that of the appellant. Moreover, in the *Devlin* case, *supra,* the defendant did not take the witness stand.

 In this case, we cannot reasonably conclude that the appellant took the witness stand merely because of the witness' reference to a "mugg shot" picture when, in doing so, he knew he would be compelled to reveal his previous criminal convictions. We are convinced that, when the appellant took the stand, he did so for the purpose of denying his guilt and not because of the inadvertent statement of the police officer. Under the circumstances of this case, the reference to the picture did not constitute reversible error.

Next, the appellant urges that the trial court erred in admitting into evidence exhibit No. 6, a knife. He contends that it was not shown that the knife, which was admitted, was *the* knife used in connection with the crime charged.

The evidence reveals that the knife in question was found in a drawer in the room where the murder was committed, ten days after the stabbing; that both eyewitnesses testified that it looked like the knife used by the appellant when he stabbed Dixon, and a police officer stated it looked like the one butcher knife he saw in the room at the time he found the victim. In addition, the autopsy surgeon testified, after measuring the blade of exhibit No. 6, that "it would fit perfectly with the wound" he saw when he made his examination. The knife was properly admitted under the rule announced by this court in *State v. Spadoni,* 137 Wash. 684, 243 Pac. 854 (1926). In that case, two revolvers

were found near the footpath close to the scene of the crime. A witness testified the accused had previously endeavored to sell him a revolver of the same caliber, style, and make as one of the revolvers found.

In regard to the admission in evidence, we stated:

"Always, the real question is, whether the matter shown has such a connection with the crime for which the accused is being tried as to tend to show that the accused committed that crime. Here, there was this connection. *The revolvers were properly admitted in evidence as tending to elucidate and make more definite the oral evidence.*" (Italics ours.)

In the instant case, the appellant was positively identified as the person who stabbed Marion Dixon with a butcher knife, and exhibit No. 6 was properly admissible as tending to elucidate and make more definite the testimony of the witnesses identifying the appellant as the killer. The hesitancy of the witnesses to state positively that it was the exact knife used by the appellant went only to the weight to be given the exhibit and the testimony by the jury, and not to the issue of its admissibility. See *State v. Slater*, 36 Wn. (2d) 357, 218 P. (2d) 329 (1950), and cases cited therein; *State v. Tranchell*, 164 Wash. 71, 2 P. (2d) 64 (1931); *State v. Elliott*, 68 Wash. 603, 123 Pac. 1089 (1912); 2 Wharton's Criminal Evidence (12th ed.) 616, § 675; L. R. A. 1918 A 717; 20 Am. Jur. 744, § 885. In any event, upon the basis of the record, the admission of the exhibit would not constitute reversible error.

Appellant's final assignment of error is based upon the alleged prejudicial misconduct of the deputy prosecuting attorney in the cross-examination of a character witness of the appellant. The appellant contends that the witness testified as to his demeanor or character, but did not testify as to his reputation in the community for being a peaceful, law-abiding citizen, and that the deputy prosecuting attorney, in an effort to discredit the appellant, questioned the witness concerning her knowledge of his acts of previous misconduct by asking the following question: "You knew he beat a man to death in St. Louis?"

■ The rule in this state permitting the examination of character witnesses relative to their knowledge of particular acts of misconduct by the accused was last stated in *State v. Anderson,* 46 Wn. (2d) 864, 285 P. (2d) 879 (1955), as follows:

"In this jurisdiction, character witnesses may be cross-examined as to their knowledge of particular acts of misconduct on the part of the person whose conduct is in issue, providing the primary purpose is to discredit the testimony of the character witness. *State v. Cyr,* 40 Wn. (2d) 840, 246 P. (2d) 480."

See, also, *State v. Robinson,* 24 Wn. (2d) 909, 167 P. (2d) 986 (1946); and *State v. Stilts,* 181 Wash. 305, 42 P. (2d) 779 (1935).

■■ Prior to asking the objectionable question, the evidence of appellant's conviction of manslaughter in St. Louis had been introduced and was before the jury. The purpose of the examination, therefore, was only to discredit the testimony of the witness. The appellant, however, contended that the question raised the element of intent to kill, which was not present in his prior record. The question does not so state, and goes no further than to infer he intended to beat the man, which resulted in his death; all of which was embraced in his manslaughter conviction. The cross-examination was not improper.

We are convinced that the appellant's constitutional rights were protected, and that he was accorded a fair and impartial trial.

The judgment is affirmed.

HILL, C. J., MALLERY, FINLEY, and OTT, JJ., concur.