[No. 39452.   Department One.   August 15, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES
RUSSELL WHEELER, *Appellant.**

*T. David Gnagey,* for appellant (appointed counsel for appeal).

*George A. Kain,* for respondent.

WEAVER, J.—Convicted by a jury of murder in the second degree, defendant appeals from a judgment and sentence of life imprisonment.

August 23, 1966, the body of Joseph A. O'Grady was found in a small garage adjacent to a house in Spokane's "Peaceful Valley." O'Grady had 13 stab wounds, two of which would have eventually caused his death. In addition, he had been struck three severe blows on the back of his head by a blunt instrument. A knife and a heavy pipe threader were found near the body. There was blood on the end of the pipe threader.

*Reported in 444 P.2d 687.

August 24, 1966, about 12:30 p.m., Sergeant Carter of the Spokane Police Department received a telephone call. A male voice stated that he "wanted to talk to someone in Homicide." He refused, however, to discuss the matter over the telephone. Upon request, Sergeant Carter identified himself, although he did not learn with whom he was talking. The voice announced that he would come into the police station; Sergeant Carter did not request him to do so.

A few minutes later, defendant arrived at the Spokane Police Station and asked to see Sergeant Carter. Sergeant Carter testified his conversation with defendant, which took 30 seconds to a minute, was as follows:

"What is it you want to see me about? At that time he said, "I think I have killed a man." And I asked him when, and he said, "Monday night." And I said, "Where?" And he pointed to his left, which would be to the west, and said, "Down in Peaceful Valley."

Q. Did you ask him any additional questions? A. I did not. Well, I said I want to—"Excuse me, I want to talk to Capt. Miles, and I would like to have him talk to you." And at that time I excused myself and left him at the desk, and walked up to the front of the detective office again and encountered Capt. Miles.

Learning from Sergeant Carter that defendant had not been advised of his constitutional rights, Captain Perry Miles informed him fully. In addition to several written confessions, defendant took the stand in his own defense and testified in detail how he had stabbed and bludgeoned decedent.

In his opening statement, defense counsel stated:

[T]he defense is not that the homicide didn't take place, or that the accused didn't do the homicide. The defense is that he was justified by reason of being required under extremely forceful conditions to commit an unlawful act—not only an unlawful act, but a very repulsive act to which anyone would object violently.

In short, defendant, an admitted homosexual, claims that decedent forced him into an automobile, drove him to the small garage in Peaceful Valley, and assaulted him physi-

cally, in order to force him to commit an unnatural act. The stabbing occurred first; decedent lived a sufficient time to ask defendant for help. Defendant then struck him three blows on the back of the head.

Defendant initially entered a special plea of not guilty by reason of temporary insanity, but withdrew his plea before trial.

Although defendant makes nine assignments of error, the main thrust of his argument on appeal is that he did not knowingly and understandingly waive counsel prior to making statements and confessions to the police.

The court held an extensive pretrial hearing upon defendant's motion to suppress evidence.

Two psychiatrists, who examined defendant the day he surrendered to the police, and three nonexpert witnesses, who observed him the same day, testified. The nonexpert witnesses testified defendant was possessed of his faculties when he surrendered and that his reactions were normal. The state's two psychiatrists testified that, in their opinion, defendant had sufficient mental ability to appreciate his peril, assist in his defense, understand his constitutional rights — as explained to him by the police — and waive intelligently these rights. Both psychiatrists testified that defendant was not depressed.

The trial court found that defendant possessed sufficient ability to understand and waive intelligently his constitutional rights. We find that the record supports this conclusion.

As this court remarked in *State v. Allen,* 67 Wn.2d 238, 239, 406 P.2d 950 (1965), defendant's conduct "would seem to set a record for voluntariness." When defendant first went to the police station, he was not under arrest, not in custody; and he was not even a prime suspect of any crime. His statements were made without fear, force, threat, compulsion, or promise.

It was not error to admit defendant's admissions and confessions in evidence.

The trial court denied defendant's motion to appoint Dr. Steven Carlisle, a psychiatrist residing in Salem, Oregon, to

examine him. Dr. Carlisle had treated defendant several years before the 1966 episode in which he is involved.

▇ Dr. Carlisle's appointment would probably have involved at least three trips at state expense to examine defendant, to testify at the confession hearing, and to testify at the trial.

The record contains nothing that indicates what Dr. Carlisle's testimony might have been. The order of the trial court denying Dr. Carlisle's appointment provides that:

[D]efendant shall be entitled to a psychiatrist of his choice, providing that said psychiatrist practices locally in the Spokane area, and said psychiatrist shall be compensated for his services by the State.

Further, defendant did not attempt to subpoena Dr. Carlisle as an out-of-state witness, pursuant to RCW 10.55.060. There is no showing that competent, local psychiatrists were not available to defendant.

The trial judge did not abuse his discretion when he denied defendant's motion to appoint Dr. Carlisle, nor did he err when he refused to sustain defendant's objection to the testimony of Sergeant Carter that "Captain Miles advised him [defendant] very fully that he didn't have to make any statement to him," on the ground that it was an impermissible conclusion. The conclusion was immediately cured by a detailed account of what was actually said to defendant by Captain Miles when he informed defendant of his constitutional rights.

The occurrence could not possibly have prejudiced defendant. It took place at the pretrial confession hearing prior to the selection of a jury.

Dr. John Lambert, a psychiatrist for the state, testified at defendant's pretrial confession hearing. At that time, defendant had not withdrawn his plea of not guilty by reason of temporary insanity.

Dr. Lambert stated that prior to his examination of defendant he had talked by telephone, concerning defendant, with Dr. Bonell, "who did the clinical folder for the Eastern State Hospital at that time." Defense counsel objected

that this constituted "a complete invasion of his [defendant's] medical privacy."

No privileged matters were offered by the state. The trial court made no ruling; hence, this assignment of error is without merit.

■ We find no error in the trial court's admission of a blood-soaked towel and certain photographs in evidence. The towel was found at the scene of the crime. It appears in photographs taken of the interior of the building in which decedent was found. The towel tends to substantiate defendant's admission that decedent was severely wounded with the knife prior to being bludgeoned with the pipe threader. The towel was properly admitted in evidence, for it tends to illustrate and make more definite the oral evidence. *State v. Duree*, 52 Wn.2d 324, 324 P.2d 1074 (1958).

Admittedly, the questioned photographs did not accurately portray the condition of light or darkness inside the garage building. Artificial light was necessary to take the photographs. The state's evidence made it clear it was not the intention of the photographs to depict the condition of light or darkness; consequently, the jury was not misled; and the trial court did not abuse its discretion when it admitted the photographs in evidence.

Defendant claims error in the refusal to allow him to answer a question propounded by his attorney. The question was: "At the time you contemplated running away, had you any idea it might have been legally justifiable to commit homicide to prevent the felony of sodomy?" Defendant made no offer of proof. The ruling was correct. The question was cumulative, repetitious, and leading.

Finally, defendant challenges the qualifications of Charles H. Drake, who has a doctorate in the field of bacteriology, immunology, and serology, and who was chairman of the department at Washington State University. His qualification as an expert in his field was established beyond dispute.

Dr. Drake identified the mattress which had been found in the garage and sent to his laboratory at Washington

State University. He testified that the stains upon it were human blood. He testified also that some of the gashes cut into the mattress had been made after the blood had been deposited. His testimony was relevant and germane to the issues. This assignment of error, which is scarcely argued in defendant's brief, is without merit.

The judgment is affirmed.

FINLEY, C. J., ROSELLINI and MCGOVERN, JJ., and LANGEN-BACH, J. Pro Tem., concur.