[No. 40642. Department Two. August 14, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. DONNELL JAMES DONALDSON, *Appellant.*\*

\*Reported in 458 P.2d 21,

514

*Sanford Clement,* for appellant.

*Henry R. Dunn* and *R. Terry Husseman,* for respondent.

DONWORTH, J.†—Appellant, Donnell J. Donaldson was employed by the Woodland school district to teach industrial arts and driver education courses. One of his pupils in the latter course was a 16-year-old girl, the prosecutrix in the instant action. On November 27, 1967, appellant, at the conclusion of a driving instruction class, brought the prosecutrix to her parents' home. Immediately upon entering the home she complained to her parents concerning certain liberties appellant allegedly took with her while they were alone in the automobile. These alleged acts of appellant are those involved in this case.

Thereafter, appellant was charged by information with taking indecent liberties with the prosecutrix, which is a gross misdemeanor. He pleaded not guilty to the charge and was tried by the court sitting with a jury. At the conclusion of the trial, the jury returned a verdict of guilty. The trial court sentenced appellant to 90 days in jail, which sentence was suspended for a period of 12 months upon condition that appellant serve 45 days in the Cowlitz County jail with credit for time already served and that he obtain psychiatric counsel. Appellant appeals from the judgment and sentence so entered.

---

†Justice Donworth is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amendment 38).

No error is assigned by appellant relating to the sufficiency of the state's evidence which was presented to prove the acts of appellant alleged in the information. Indeed, there appears to be substantial evidence (which evidently the jury believed) to support his conviction.

There are two assignments of error upon which appellant relies for reversal of the instant conviction and sentence. The first one relates to questions propounded by the state on cross-examination of appellant's character witnesses and questions asked of appellant on cross-examination when he took the stand in his own defense.

Appellant chose to put his own character in issue by calling character witnesses to testify on his behalf. He also elected to take the stand and deny that the events testified to by the prosecutrix ever occurred. He also denied that shortly after his arrest he had orally admitted to a deputy sheriff and the prosecutor that he had committed the acts concerning which the prosecutrix had testified. Further, appellant denied that on the day in question, when the acts complained of allegedly occurred, that he and the prosecutrix had driven on Dike Road in Woodland, which was the place where the prosecutrix claimed the acts were committed.

In his brief appellant quotes the questions propounded by the state to the character witnesses on cross-examination, and also to appellant himself while he was on the stand testifying on his own behalf. Almost without exception the character witnesses, in response to the questions, answered in the negative. In essence, the questions asked by the state on cross-examination, of which appellant complains, related to rumors of similar acts of misconduct by the accused. After each character witness had testified, the state, on cross-examination, asked them if they had heard of certain specific acts of misconduct of appellant. The similar acts of misconduct involved rumors that appellant had been discharged 2 years prior to this action by another school for making improper advances to young female pupils; that he allegedly had been carrying on an affair with a 60-year-old secretary in Raymond; that he had allegedly

"got fresh", with another girl in the driver's education course in Woodland the year before and that she had to leave the car to avoid him; and that appellant had an annoying habit of slapping young girls on the backside. All the questions asked by the state were prefaced by "Did you hear," "Have you heard," or "Do you know."

In most cases an objection was interposed by appellant to the state's questions on cross-examination. It was appellant's contention that this line of cross-examination was highly prejudicial and constituted reversible error in that it concerned prior acts of misconduct involving crimes of which appellant had never been formally accused or found guilty. The state, on the other hand, contended that since appellant had elected to put his character in issue, he opened up an avenue of allowable cross-examination of his character witnesses and himself in an attempt to impeach their testimony regarding his character.

The trial court overruled appellant's objections to the questions posed by the state on the basis that appellant had elected to put his character in issue, and by so doing he created a situation which entitled the state to cross-examine the character witnesses as to whether they had heard of specific acts of prior misconduct by the accused. The trial court further held that the purpose of such testimony was not to prove the fact that such events occurred, but rather was a legitimate attempt to impeach the testimony of the character witnesses.

 Article 1, section 9 of the Washington State Constitution provides that no defendant in a criminal prosecution can be compelled to take the witness stand and testify against himself. Article 1, section 22 of the same document gives the defendant the right to testify if he elects to do so. When the defendant takes the witness stand on his own behalf, RCW 10.52.040 provides that he shall be subject to all the rules of law relating to cross-examination of witnesses. *See also State v. Robideau*, 70 Wn.2d 994, 425 P.2d 880 (1967). In view of the foregoing provisions, we follow the general rule of law that a defendant in a criminal case must be tried on the offense charged and that evidence of

unrelated acts of misconduct may not be admitted. *State v. Emmanuel,* 42 Wn.2d 1, 253 P.2d 386 (1953); *State v. O'Donnell,* 195 Wash. 471, 81 P.2d 509 (1938).

However, in *Emmanuel,* we recognized an exception to the aforementioned rule when we stated at 14:

> Notwithstanding what has just been said, if a defendant puts his prior conduct into issue by testifying as to his own past good behavior, he may be cross-examined as to specific acts of misconduct unrelated to the crime charged. *State v. Armstrong,* 29 Wash. 57, 69 Pac. 392; *State v. Melvern,* 32 Wash. 7, 72 Pac. 489; *State v. Hollister,* 157 Wash. 4, 288 Pac. 249; *State v. Johnson,* 180 Wash. 401, 40 P. (2d) 159; *State v. Kelly,* 187 Wash. 301, 60 P. (2d) 50.

When appellant took the stand in his own behalf in the instant action, he testified as to his own past good behavior and specifically denied that he had been involved in the alleged prior acts of misconduct. By injecting these issues into the direct examination, appellant opened the door for legitimate cross-examination of his testimony by the state. By so doing, appellant is now foreclosed by our holding in *State v. Emmanuel, supra,* from claiming error.

After a thorough review of the record, including the questions asked and the answers given, we are convinced that the trail court properly applied the law in this jurisdiction and properly exercised its discretion in allowing the cross-examination of appellant. Therefore, we find no reversible error as to the instant cross-examination of appellant.

■ The second portion of the first assignment of error is concerned with the cross-examination by the state of character witnesses called by appellant.

In *State v. Stilts,* 181 Wash. 305, 42 P.2d 779 (1935), defendant therein was charged with possession of marijuana. In aid of his defense, defendant called 10 character witnesses. On cross-examination, one of the witnesses was asked if he did not know that appellant was selling narcotics to high school pupils, or was reported to have been making such sales. The witness answered in the negative.

Another witness was asked a similar question. In ruling on the propriety of such cross-examination, we said at 312:

> On cross-examination of a character witness, the latter can be interrogated as to his knowledge of the defendant's acts and whether or not the witness has information to the effect that the defendant has been guilty of some misconduct. Appellant himself put his character in issue by calling witnesses who testified that it was good. In cross-examining these witnesses, the state did not transcend the bounds of legitimate interrogation, as defined by this court in the cases of *State v. Austin,* 83 Wash. 444, 145 Pac. 451, and *State v. McMullen,* 142 Wash. 7, 252 Pac. 108.

*See also State v. Robinson,* 24 Wn.2d 909, 915-16, 167 P.2d 986 (1946).

Thereafter, in *State v. Cyr,* 40 Wn.2d 840, 246 P.2d 480 (1952), we again acknowledged the general rule in this jurisdiction, but noted that we follow the minority rule in regard to the form of the question allowed. In this state, a character witness may be cross-examined as to his personal knowledge of acts of misconduct by the accused. The majority rule holds that such witnesses may only be cross-examined as to what he has heard of reports or rumors of such acts. Accordingly, it is proper to preface questions in such situations in this state by either "Did you hear," "Have you heard," or "Do you know." *See also* 28 Wash. L. Rev. 238-39 (1953).

Also, in *State v. Cyr, supra,* we noted that there is a limitation on the admission of cross-examination of character witnesses as to acts of misconduct by the accused. At 845-46, we stated:

> This court, however, adheres to the general rule that cross-examination, in situations of this kind, must be limited to an effort to discredit the testimony of the character witness. *State v. Presta,* 108 Wash. 256, 183 Pac. 112. Stated conversely, the rule is that such cross-examination may not be utilized for the primary purpose of discrediting the person on trial. *State v. Bozovich,* 145 Wash. 227, 259 Pac. 395.

A review of the pertinent testimony shows no such improper purpose in the case at bar. It shows, rather,

that the questions were asked for the entirely proper purpose of undermining the credibility of the character witnesses, and that they probably had that effect.

*See also State v. Anderson,* 46 Wn.2d 864, 285 P.2d 879 (1955); *State v. Duree,* 52 Wn.2d 324, 324 P.2d 1074 (1958); 47 A.L.R.2d 1258, 1322-31; 71 A.L.R. 1504; 5 Meisenholder, Wash. Prac. § 4 pp. 22-23 (1965).

Our review of the decisions of this court in this area shows that a character witness may be cross-examined by the state as to his knowledge of acts of misconduct by accused or rumors of such acts in the community. The primary purpose of such cross-examination, however, must be to impeach the testimony of the character witness and must not be for the primary purpose of discrediting the person on trial. Admittedly, there is a fine line drawn between that testimony which discredits the defendant and that which is designed primarily to discredit the testimony of the character witness. However, in this jurisdiction this is a necessary risk which a defendant must assume when he calls character witnesses on his behalf. *See* 5 Meisenholder, Wash. Prac. § 4, p. 22 (1965).

In such cases, we must look to the trial court's ruling in such matters since that court has before it the parties involved, their counsel, and the character witnesses involved in the action, and can observe demeanor and demonstrated purpose in asking and answering the question on cross-examination. In the present case, the trial court ruled that the primary purpose of the state's cross-examination was to discredit the testimony of the character witnesses and not to put appellant on trial for unrelated acts of misconduct. We cannot say from our review of the record that the trial court, in the case at bar, abused its discretion in view of the case law in this jurisdiction. Therefore, we find appellant's assignment of error to be without merit.

█ In his remaining assignment of error, appellant challenges the giving of instruction No. 6 by the trial court, and asserts that his requested instruction No. 3 should have been given.

Instruction No. 6 reads as follows:

> Admissions, if any, made by the defendant charged with the crime, shall be considered by you if you find that such admissions were made voluntarily and not caused by duress or fear produced by threats or induced by promises. A voluntary admission is to be considered by the jury in connection with all of the other evidence in the case in determining the guilt or innocence of the accused and its weight as evidence like that of any other fact is to be determined by you alone. If you find that any such voluntary admissions have been made in this case, you have a right in weighing such testimony to consider all of the facts and circumstances connected therewith, together with the defendant's interest, if any, in the transaction, and his knowledge, if he had any, of the circumstances surrounding the same, and all other circumstances which may throw any light upon or aid you in weighing such testimony and you may give such admissions such weight and credibility in view of the surrounding circumstances as you see fit. If you find that the admissions made by the defendant, if any, were involuntary such admissions shall not be considered by you in reaching the verdict.

Appellant's instruction No. 3 is almost identical except as it reads in part as follows:

> Admissions, if any, made by the defendant charged with the crime, shall be considered by you if you find that such admissions were made *only after defendant understood the meaning of the warning and advice given to him in regards to his constitutional rights* and that further such admissions were not caused by duress or fear . . .

(Italics ours.) The italicized portion of the foregoing instruction was the only material difference between the instructions and was omitted by the trial court in its instruction No. 6.

Appellant asserts that the foregoing language in his instruction was necessary in order for the jury to weigh appellant's emotional state at the time he gave the admissions to the authorities. However, we find his contention to be without merit in view of the trial court's admonition to the jury in its instruction that they could weigh all the circumstances surrounding the giving of such admissions.

The jury had before it evidence as to appellant's emotional state and appellant had testified at the CrR 101.20W hearing (in the absence of the jury) that he had been advised of this rights and that he knew what his constitutional rights were at the time he talked to the authorities.

The judgment and sentence of the trial court is affirmed.

HUNTER, C. J., HILL and ROSELLINI, JJ., concur.

NEILL, J. (concurring)—Allowing prosecutors unlimited inquiry as to specific acts of misconduct of the accused during cross-examination of character witnesses opens many opportunities for abuse. *See Michelson v. United States,* 335 U.S. 469, 93 L. Ed. 168, 69 S. Ct. 213 (1948); 3 Wigmore, Evidence § 988, 619-24 (1940); McCormick, Evidence § 158, 336-37 (1954). For this reason, this court has subjected the practice to limitations. Cross-examination of character witnesses may not be used for the primary purpose of discrediting the person on trial. *State v. Bozovich,* 145 Wash. 227, 259 P. 395 (1927); *State v. Cyr,* 40 Wn.2d 840, 246 P.2d 480 (1952); *State v. Anderson,* 46 Wn.2d 864, 285 P.2d 879 (1955). Defendant's character witness on cross-examination may not be asked questions which have no basis in fact, nor questions carrying pejorative connotations which are so vague as to be meaningless. *State v. Sexsmith,* 186 Wash. 345, 57 P.2d 1249 (1936).

In *State v. Cyr, supra* at 846, we outlined defendant's remedy if he believes the prosecutor's questions have no basis in fact:

> There is no rule requiring the state, on its own motion, to produce evidence in proof of the supposed misdeeds concerning which character witnesses are cross-examined. If the defendant in any case desires to question the accuracy of the facts implicit in this kind of cross-examination, he can either testify to the contrary or can ask the trial court to inquire into the matter in the absence of the jury. Needless to say, if the trial court should be thus persuaded that such questions asked on cross-examination were without foundation in fact, the appropriate remedy would be to declare a mistrial.

522

Defendant in this case did not choose to avail himself of this remedy, and I am not convinced the trial court abused its discretion in admitting this line of questioning. *See State v. Anderson, supra.* Therefore, I concur.