[No. 13476–1–I.   Division One.   January 11, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. VINCENT M. R. FITZGERALD, *Appellant.*

*Allen & Hansen, P.S., David Allen,* and *Richard Hansen,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Schwartz, Deputy,* for respondent.

RINGOLD, J.—The defendant, Vincent Michael Reginald Fitzgerald, was found guilty by a jury of two counts of statutory rape. Fitzgerald appeals, arguing that a single verdict on duplicitous counts deprived him of a unanimous jury verdict and that the trial court made several evidentiary errors. We reverse and remand for a new trial.

Fitzgerald frequently traveled to India for business purposes. In 1977 he visited an orphanage in Bombay. This was the first of many visits. A girl, "A", born January 23, 1973, and a resident in the orphanage, was adopted by Fitzgerald and his wife. She was brought to the United States in 1980.

While "A" was at the orphanage she met another girl, "B", and they became friends. "B", born March 19, 1974, was adopted by a couple in the Seattle area. In India, Fitzgerald took both children from the orphanage for overnight trips. At trial the children stated that Fitzgerald fondled them and placed objects in their anal and vaginal areas during these trips. While the children's testimony conflicted on some incidents, they each testified that this abuse continued after they arrived in Washington.

Fitzgerald denied any wrongdoing. He explained that in India he helped the children get accustomed to western style toilets and put ointments on the children for skin problems but did nothing improper. He admitted that after coming to Washington he may have touched "A"'s vaginal area by accident while she was on his lap listening to him read a book.

## The Jury Verdict

The jury was instructed that in order to find Fitzgerald guilty on count 1 they must find that he had sexual intercourse with "A" between November 8, 1981, and November 8, 1982. To find Fitzgerald guilty of count 2, the jury had to find that he had sexual intercourse with "B" between May 1, 1981, and January 2, 1982. The jury returned a verdict finding Fitzgerald guilty of both counts without specifying which underlying acts of intercourse constituted the statutory rapes. The children had testified they had been raped on several occasions. Fitzgerald argues that each act constituted a separate offense, requiring a unanimous verdict as to each separate crime described. The State responds that Fitzgerald did not preserve the error for appeal, or alternatively, the error is harmless.

■ A defective verdict which deprives the defendant of a unanimous verdict invades the fundamental constitutional right to a trial by jury. The issue may, therefore, be raised for the first time on appeal. *State v. Russell,* 101 Wn.2d 349, 678 P.2d 332 (1984).

The Supreme Court recently addressed the issue of jury unanimity in *State v. Petrich,* 101 Wn.2d 566, 683 P.2d 173 (1984). In *Petrich,* the defendant was accused of molesting his 13–year–old granddaughter who testified to several incidents of sexual abuse. The jury returned a general verdict of guilty without specifying which underlying acts were relied upon in reaching the decision. The Supreme Court held this was error and reversed; conceding, however, that "[u]nder appropriate facts, a continuing course of conduct may form the basis of one charge in an information." *Petrich,* at 571. Here, as in *Petrich,* the only connection between the incidents of rape is that the victims are the same. This connection is not enough to find that the offenses contained in each count constitute a single transaction. *Petrich,* at 571. When, as here, a defendant is charged with a single count of criminal behavior, encompassing several distinct acts, jury unanimity must be protected.

■ To insure jury unanimity, the Supreme Court stated:

The State may, in its discretion, elect the act upon which it will rely for conviction. Alternatively, if the jury is instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, a unanimous verdict on one criminal act will be assured. When the State chooses not to elect, this jury instruction must be given to ensure the jury's understanding of the unanimity requirement.

*Petrich,* at 572.

No election was made by the State in the present case, and the trial court did not give an appropriate instruction. While the trial court instructed the jury that it had to decide counts 1 and 2 separately, this instruction was insufficient because the evidence indicated multiple instances of conduct which could have been the basis for each count. *See Petrich,* at 573.

This type of error is harmless only if a rational trier of fact could have found each incident proved beyond a reasonable doubt. *Petrich,* at 573. In light of the conflicting testimony of the children as to the various incidents of sexual abuse, a rational trier of fact could have entertained a reasonable doubt as to one or more of the incidents of abuse. Thus, we must reverse and remand for a new trial.

### EVIDENTIARY RULINGS

Because the same issues may arise upon retrial, we review Fitzgerald's other assignments of error.

### 1. Medical Opinion

During the State's case in chief, Dr. Griffith, a pediatrician, testified that based on her interviews with the children she believed that they had been molested. Fitzgerald contends that Dr. Griffith's opinion was improperly admitted because the results of the physical examinations of the victims were inconclusive. He also argues that the effect of her opinion testimony is to tell the jury that she believes the children were truthful, invading the jury's responsibility to make credibility determinations. The State responds that Dr. Griffith is a board certified pediatrician who has worked extensively with sexually abused children, and as

an expert may testify about an ultimate issue of fact.

Although generally expert witnesses may give an opinion on an ultimate issue of fact, *State v. Alden,* 73 Wn.2d 360, 438 P.2d 620 (1968), many jurisdictions do not allow an opinion based on the credibility of the rape victim. In similar factual circumstances as this case, other jurisdictions have held it was reversible error for a pediatrician or a psychiatrist to testify that they believed that children were sexually abused based on their interviews of the children. *See State v. Taylor,* 663 S.W.2d 235, 240–41 (Mo. 1984); *State v. Keen,* 309 N.C. 158, 305 S.E.2d 535, 537–38 (1983); *Commonwealth v. Carter,* 9 Mass. App. 680, 403 N.E.2d 1191 (1980), *aff'd,* 383 Mass. 873, 417 N.E.2d 438 (1981).

■ Credibility is a crucial issue because the children's and Fitzgerald's testimony directly conflict. It is improper for an expert to base an opinion about an ultimate issue of fact solely on the expert's determination of a witness's veracity. The physical evidence does not show whether sexual abuse of the children occurred. Dr. Griffith's opinion is based solely on her evaluation of the children's version of the events. "'An expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility.'" 5A K. Tegland, Wash. Prac., *Evidence* § 292, at 39 n.4 (2d ed. 1982); *United States v. Samara,* 643 F.2d 701, 705 (10th Cir.), *cert. denied,* 454 U.S. 829 (1981). The trial court erred in permitting Dr. Griffith to state her opinion that the children had been molested.

### 2. ER 803(a)(4)

The trial court, relying on ER 803(a)(4), the medical history exception to the hearsay rule, also permitted Dr. Griffith to repeat statements made to her by the children. Fitzgerald contends that ER 803(a)(4) does not apply because the children's statements were not necessary or reasonably pertinent to the diagnosis of Dr. Griffith.

■ Former Washington law was liberalized by ER 803(a)(4). *Bertsch v. Brewer,* 97 Wn.2d 83, 640 P.2d 711 (1982). Statements may be admitted under ER 803(a)(4) if

they are:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

A qualified physician, whether treating the patient or examining a person solely to enable the doctor to testify at trial, may relate what the patient told her regarding the nature or cause of the injury insofar as it pertains to treatment or diagnosis and not fault. *Kennedy v. Monroe,* 15 Wn. App. 39, 47, 547 P.2d 899 (1976).

Several United States Circuit Courts of Appeals have held testimony similar to that of Dr. Griffith's admissible under the parallel federal evidence rule 803(4). *United States v. Nick,* 604 F.2d 1199 (9th Cir. 1979); *United States v. Iron Shell,* 633 F.2d 77 (8th Cir. 1980), *cert. denied,* 450 U.S. 1001 (1981); *United States v. Iron Thunder,* 714 F.2d 765 (8th Cir. 1983).[1]

In the present case Dr. Griffith was concerned with the physical and mental well being of the children. The children's statements were consistent with the purpose of promoting diagnosis and treatment. The statements are also relevant to rule out treatment, which brings them within ER 803(a)(4). *Iron Shell,* at 84. The trial court properly admitted the testimony.

Fitzgerald also asserts that even if some of the statements are related to a medical diagnosis, this would not include statements attributing fault to Fitzgerald. Statements concerning who assaulted a victim would seldom, if ever, be sufficiently related to diagnosis or treatment to be admissible. *Iron Shell,* at 84. Though such statements are not admissible under ER 803(a)(4), identity was not an issue; therefore, the error was harmless. *State v. Ferguson,*

---

[1] Federal case law interpreting a federal rule adopted by the state is probative of the proper construction of the state rule. *State v. Burton,* 101 Wn.2d 1, 676 P.2d 975 (1984).

100 Wn.2d 131, 667 P.2d 68 (1983).

### 3. Other Expert Testimony

In the State's rebuttal, Dr. Dreiblatt stated an opinion that child molesters could have outward manifestations of good character. Fitzgerald contends that Dr. Dreiblatt's testimony was inappropriate for two reasons: (1) there was no foundation laid showing a scientific basis generally accepted in the psychological community to support Dr. Dreiblatt's opinion as required by *State v. Canaday,* 90 Wn.2d 808, 585 P.2d 1185 (1978); and (2) the testimony improperly stereotyped child molesters.

Dr. Dreiblatt's testimony did not link any characteristics of Fitzgerald to a stereotype of child molesters as the defendant claims. Although Dr. Dreiblatt's opinion is relevant to rebut the testimony of Fitzgerald's reputation witnesses, the opinion lacked the proper foundation. The Supreme Court has adopted the *Frye*[2] standard, which requires that the underlying principles of an expert's opinion be generally accepted by the scientific community. *Canaday,* at 813; *State v. Martin,* 101 Wn.2d 713, 719, 684 P.2d 651 (1984). The State did not provide any evidence that Dr. Dreiblatt's opinion was based upon a generally accepted theory in the psychological community.

### 4. Hearsay Testimony

Fitzgerald argues that the testimony of Jan Johnson, a social worker, contained inadmissible hearsay. The following exchange is the basis for the defendant's assignment of error:

[Mr. Schwartz, (prosecutor)]:
Q. I am interested at this point in what was told ["A"] prior to any questions of her?
[Jan Johnson]
A. Okay. I am sure I told ["A"] that I had interviewed two other children that she knew, who had been in the orphanage with her, and that they had had a touching problem, and that—

---

[2]*Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923).

MR. ALLEN (Defense counsel): Excuse me. Objection as to what other girls told Ms. Jan Johnson.

THE COURT: Yes. This is not offered for that purpose, however. As the court understands the question of this witness, the question is what this witness told the child, isn't that correct?

MR. ALLEN: That's correct.

MR. SCHWARTZ: That's correct.

THE COURT: Yes. So it is understood that this may or may not have been taking place, but it is solely for that purpose. Overruled for that reason.

This witness here is subject to cross–examination and may be—may tell what she told. Go ahead.

Johnson's testimony was not introduced to prove that two unnamed children from India had been molested. Rather, the evidence was presented to show how Johnson conducted her interviews of "A" and "B." The object of the State's examination was to dispel any notion the jury might have that the children's testimony in court was the product of suggestive questioning by Johnson. Because Johnson's statements were not introduced to prove the truth of the matter asserted, they are not hearsay. ER 801(c); *Moolick v. Lawson,* 33 Wn. App. 665, 668, 655 P.2d 1185 (1982).

While the statements are not hearsay, they are highly prejudicial. Although Fitzgerald was not mentioned by name, the two unnamed children were said to have stated that both they and "A" had been molested. The jury could have drawn the inference that Fitzgerald was the offender.

ER 403 requires the trial court to balance the prejudicial effect against the probative value of evidence before admitting it over objection. *Cf. State v. Saltarelli,* 98 Wn.2d 358, 361, 655 P.2d 697 (1982). We cannot say from this record whether the trial court properly applied ER 403 in considering the admissibility of Johnson's statements.

### 5. Rebuttal Testimony of Prior Bad Acts

A young girl, "C", a former resident of the orphanage, came to the United States in 1982 when she was 13 years old. During the State's rebuttal "C" testified over objection that Fitzgerald had raped her and "A" in India.

The State contends that "C"'s testimony is permissible for several purposes. First, it contradicts Fitzgerald's claim that he did not sexually abuse other girls at the orphanage. Second, "C"'s testimony shows that any touching that occurred was not solely for healthful reasons or by virtue of mistake. Third, her testimony indicates Fitzgerald's prior "lustful disposition" toward "A." Fourth, and last, "C"'s statements illustrate that Fitzgerald's relationship with "A" and the orphanage was not wholesome or charitable as he had claimed.

Evidence of prior bad acts is admissible only if relevant to a material issue before the jury. *State v. Goebel,* 36 Wn.2d 367, 378, 218 P.2d 300 (1950). Prior Washington law was adopted in ER 404(b), which states:

**(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

It is within the discretion of the trial court to admit this type of evidence after determining that the probative value outweighs the prejudice to the defendant. *Goebel,* at 378–79. *Ferguson,* 100 Wn.2d at 133.

The State's argument that "C"'s testimony is admissible to rebut Fitzgerald's claim that he did not abuse other girls in India is without merit. Evidence of prior misconduct is impermissible for impeachment on a collateral issue. *Goebel,* at 368–70.

"C"'s testimony was properly admitted, however, to show absence of mistake. In *State v. Bouchard,* 31 Wn. App. 381, 639 P.2d 761 (1982), the court held that a son's testimony that his father abused him was admissible in a trial for molesting the daughter to rebut a defense claim that the daughter's perforated hymen had been caused by an accident. Fitzgerald testified concerning one occasion where inappropriate touching accidentally occurred. "C"'s testi-

mony rebuts this claim of accident.

■■ Rebuttal evidence is admissible if not cumulative and if it answers new points raised by the defense. The admission of such evidence is within the discretion of the trial court and will not be overturned absent manifest abuse. *State v. White,* 74 Wn.2d 386, 394–95, 444 P.2d 661 (1968).

"C"'s statement that she saw "A" being molested by Fitzgerald would be admissible in the State's case in chief to show Fitzgerald's prior lustful disposition toward "A." *Ferguson.* The trial court, however, allowed both "A" and "B" to testify concerning prior acts in India for the same purpose. This additional testimony in rebuttal is cumulative and prejudicial where credibility is a vital issue. *State v. Lampshire,* 74 Wn.2d 888, 894, 447 P.2d 727 (1968).

Testimony about why Fitzgerald visited the orphanage and whether his relationship with "A" was wholesome was admitted in the State's case in chief. Admission of rebuttal testimony on the same issues was error. *Lampshire.*

■■ Fitzgerald contends that the trial judge's limiting instruction concerning "C"'s testimony was inadequate. The trial judge orally instructed the jury that "C"'s testimony "may be considered by you only for the limited purpose of determining whether it tends to prove the defendant's motive, intent, preparation, plan, knowledge, identity, opportunity, or absence of mistake." The defendant did not object to this instruction and may not, therefore, raise this issue for the first time on appeal. *See Ferguson,* at 138. Additionally, Fitzgerald proposed a jury instruction later given by the trial court which used the same wording as the oral instruction. An instruction requested by the defense cannot be later cited as error.

*State v. Boyer,* 91 Wn.2d 342, 588 P.2d 1151 (1979).

■ It is preferable, however, to use an instruction which gives the specific reasons for which the evidence is to be admitted. A general instruction including all permissible reasons under ER 404(b), whether relevant or not, is improper. *See State v. Saltarelli, supra* at 362–63.

6. Cross Examination of a Reputation Witness

Fitzgerald presented 12 witnesses to testify that he had a good reputation for honesty and truth in the business community. One of these witnesses, Charles Soncrant, was cross–examined regarding sexual misconduct by Fitzgerald in India. Fitzgerald contends that this was improper.

■ *State v. Donaldson,* 76 Wn.2d 513, 458 P.2d 21 (1969) is dispositive of the issue. In *Donaldson,* the defendant was charged with taking indecent liberties with a minor. A character witness was cross–examined concerning similar acts of misconduct. The Supreme Court held the trial court did not abuse its discretion in allowing the questioning.

Here Soncrant was asked whether his opinion of Fitzgerald would change if he had known that Fitzgerald was accused of molesting another child in India. The trial court must determine the good faith of the prosecution and absent a manifest abuse of discretion the ruling of the trial court will be upheld. *State v. Styles,* 93 Wn.2d 173, 176–77, 606 P.2d 1233 (1980). In the present case, the trial court heard argument outside the presence of the jury and apprised the State of the appropriate guidelines. In light of "C"'s testimony regarding Fitzgerald's other acts of misconduct, the trial court cannot be said to have abused its discretion in determining the prosecution acted in good faith.

The judgment is reversed and we remand for a new trial.

SCHOLFIELD, A.C.J., and DURHAM, J., concur.