# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 70768-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY ALLEN LUDWIG, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 22, 2014 |
| | ) | |

LAU, J. — Timothy Ludwig appeals his conviction for one count of first degree incest and three counts of second degree incest involving SL. He argues that the trial court's limiting instruction failed to adequately limit the jury's consideration of prior misconduct evidence. He further contends that defense counsel was ineffective for failing to object. Because Ludwig failed to demonstrate a manifest constitutional error that can be raised for the first time on appeal or that defense counsel's failure to object caused prejudice, we affirm the convictions. And because the parties agree that the standard range term of confinement combined with the term of community custody exceeds the standard range, we remand to the sentencing court to correct the judgment and sentence consistent with this opinion.

## FACTS

Timothy Ludwig is SL's biological father. When SL was 13 years old, the family lived in Vancouver, Washington. One night when SL was in the shower, Ludwig walked in the bathroom, opened the shower curtain, and began washing SL. When SL protested, Ludwig told her this activity was normal because SL was his daughter. After that, Ludwig regularly got in the shower with SL. Ludwig had SL wash his penis and testicles. Ludwig got an erection and ejaculated when SL did this. When she was done, Ludwig washed SL, including her genitalia. Ludwig never showered with SL unless he was alone in the house with her.

The family moved to the city of Snohomish when SL was 16. About six months after the move, Ludwig resumed his practice of having SL wash his penis and masturbate him in the shower. When SL protested, Ludwig again told her there was nothing to be ashamed of because he was her father. This occurred about once a week. On one occasion, Ludwig reached down and rubbed his finger between SL's vaginal lips. SL moved away quickly before Ludwig penetrated her vagina. Occasionally Ludwig asked SL to put her mouth on his penis, but she always refused. Sometimes he would plead with her and other times he would get angry and slap her.

Ludwig also had sexual contact with SL in the living room and in his bedroom. Ludwig sometimes had SL masturbate him with a pink rubber device he kept on a nightstand beside his bed.

Ludwig subjected SL and her siblings to physical discipline. On one occasion when they were living in Alaska, Ludwig punished the children by having them strip naked and eat dinner in the living room while Ludwig watched.

The last time Ludwig had sexual contact with SL was in May 2012. SL became so anxious that she experienced stomach pains. One of SL's friends encouraged her to report the sexual abuse. She walked with SL to the school counselor's office. At the office, SL reported the abuse to a school counselor and a police officer. Police obtained a search warrant for Ludwig's home. There they found the pink rubber device in Ludwig's bedroom, as SL had described it. Testing revealed evidence of both Ludwig and SL's DNA on the device, as well as a small amount of DNA from a third unknown person. Ludwig admitted to police that he used the device but denied any sexual contact with SL. Ludwig told police SL had no reason to touch the device but stated that she frequently came into the bedroom where it was kept.

Ludwig's stepdaughter LT testified that Ludwig sexually abused her when she was between the ages of 11 and 13. LT was 23 years old at the time of trial. LT said that when the family lived in Texas, Ludwig asked her to bathe him because he had a broken hand. She said that Ludwig's genitals were covered with a washcloth, but the incident made her feel uncomfortable. The family later moved to Alaska. LT's mother worked nights, and Ludwig had LT sleep with him in his bed almost every night. LT said Ludwig would touch her breasts and vagina over her clothing. Once or twice a week, Ludwig watched LT when she showered. When LT objected, Ludwig said that he had a right to do that because he was her father. On one occasion during a driving trip, because LT lost a game they were playing in the car, Ludwig stopped the car, directed LT behind a tree, and put his penis in her mouth while he masturbated. LT also recalled the incident in which Ludwig punished the children by forcing them to eat dinner naked.

Ludwig was charged in a third amended information with one count of first degree incest and three counts of second degree incest for acts committed against SL between June 2009 and May 3, 2012. The jury convicted Ludwig as charged. The trial court sentenced him to concurrent standard range terms of incarceration, plus three years' community custody on each count. Ludwig appeals.

## ANALYSIS

### Limiting Instruction

Pretrial, the trial court granted the State's ER 404(b) motion to allow Ludwig's former stepdaughter LT to testify about how Ludwig sexually abused her during her early teens. The court admitted LT's testimony to show Ludwig's "design to commit sexual assault as well as a pattern of grooming children for abuse." Br. of Appellant at 3. The court also allowed SL to testify about uncharged "incidents of sexual touching" to show Ludwig's lustful disposition toward SL and to establish res gestae evidence—conduct close in time to the charged crimes.

Ludwig first argues that the trial court's limiting instruction failed to limit the jury's consideration of prior misconduct evidence to its proper purposes. ER 404(b) governs the admissibility of prior misconduct evidence for purposes other than proof of general character. The rule provides a nonexhaustive list of purposes for which misconduct evidence is admissible.

ER 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

When evidence of prior misconduct is admitted under ER 404(b), courts may give a limiting instruction to ensure that the jury does not consider the evidence for an invalid purpose if requested by a party. "An adequate ER 404(b) limiting instruction must, at a minimum, inform the jury of the purpose for which the evidence is admitted and that the evidence may not be used for the purpose of concluding that the defendant has a particular character and has acted in conformity with that character." State v. Gresham, 173 Wn.2d 405, 423-24, 269 P.3d 207 (2012).

The State proposed, and the court gave, the following limiting instruction for evidence of other sexual misconduct:

> In a criminal case in which the defendant is accused of incest, evidence of the defendant's commission of another offense or offenses of sexual misconduct are admissible and may be considered for its bearing on any manner to which it is relevant. However, evidence of a prior offense or offences on its own is not sufficient to prove the defendant guilty of any crime charged in an Amended Information. Bear in mind as you consider this evidence that at all times the State has the burden of proving that the defendant committed each of the elements of the offenses charged in the Amended Information. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the Amended Information.

Ludwig did not object to this limiting instruction below. "The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). State v. Fitzgerald, 39 Wn. App. 652, 662, 694 P.2d 1117 (1985) (Because defendant failed to object to the court's oral limiting instruction, he may not raise it for the first time on appeal.). An exception to this general rule exists for a "manifest error affecting a constitutional right." RAP 2.5(a)(3). "To meet RAP 2.5(a) and raise an error for the first time on appeal, an appellant must demonstrate (1) the error is manifest and (2) the error is truly of constitutional dimension." State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756

(2009). In other words, the appellant must "identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial." State v. Kirkman, 159 Wn.2d 918, 926–27, 155 P.3d 125 (2007). "Instructional errors do not automatically constitute manifest constitutional error." State v. Guzman Nunez, 160 Wn. App. 150, 163, 248 P.3d 103 (2011).

Here, the limiting instruction claim does not involve a manifest constitutional error. Our Supreme Court has noted several instructional errors that implicate a constitutional interest, including instructions that direct a verdict, shift the burden of proof to the defendant, fail to define the "beyond a reasonable doubt" standard, fail to require a unanimous verdict, and omit an element of the crime charged. See O'Hara, 167 Wn.2d at 100–01. These errors "affect a defendant's constitutional rights by violating an explicit constitutional provision or denying the defendant a fair trial through a complete verdict." O'Hara, 167 Wn.2d at 103. The alleged error in this case does not implicate these serious constitutional concerns.

Moreover, absent a request, a trial court is not required to give a limiting instruction for ER 404(b) evidence. Russell, 171 Wn.2d at 123. In this case, we decline to conclude that the alleged imperfect limiting instruction implicates a constitutional right when a limiting instruction is not mandatory as a matter of law unless requested. Therefore, if a trial court may omit the instruction altogether without implicating constitutional interests, then the trial court here committed no constitutional error by providing the instruction at issue.

In any event, any nonconstitutional error was harmless. The alleged error is harmless "'unless within reasonable probabilities had the error not occurred the

outcome of the trial would have been materially affected.'" Gresham, 173 Wn.2d at 425 (internal quotation marks omitted) (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)). Because of the instruction given at trial, the way the prosecutor used the evidence admitted under ER 404(b), and the strength of the evidence, the allegedly erroneous limiting instruction was harmless.

First, ER 404(b) prohibits only one improper purpose for which evidence of prior misconduct may not be used—to demonstrate the defendant's character and prove that he acted in conformity with that character. Gresham, 173 Wn.2d at 421. While the instruction given to the jury did not specify the proper purposes for which the jury could consider the evidence, it did ensure they would not consider the evidence for an improper purpose. The instruction explicitly stated that any evidence of a prior offense "on its own is not sufficient to prove the defendant guilty of the crimes charged." Therefore, the instruction properly informed the jury not to consider the evidence to determine whether the defendant was guilty simply because he acted "in conformity" with prior behavior.

Second, the record shows that the prosecutor never urged the jury to use the evidence of prior misconduct for an improper purpose. At closing, the prosecutor argued to the jury to use the evidence for a proper purpose:

> You heard [L] say she had been groomed in the same way years before [S]. And the instruction with respect to I do not want you to consider that, because that happened with [L] doesn't mean he's guilty, what it means is it shows that the defendant in his conduct with [L] had a design. He had a design to molest and sexually assault [S]. And the similarities that you heard in the testimony, the showering, the being made to watch the defendant masturbate, those are similar things years apart that corroborate what that woman told you on the witness stand.

Verbatim Report of Proceedings (June 12, 2013) at 293. Here, the prosecutor emphasized to the jury the permissible purposes for which they may consider evidence of prior misconduct.

Third, Ludwig does not challenge the admissibility of the uncharged evidence involving LT and SL. Even if the court had given the WPIC 5.30 instruction,[1] the outcome of the trial within reasonable probabilities would have been the same in light of the ample evidence of guilt at trial, summarized above. The error, if any, was harmless.

Ineffective Assistance of Counsel

Ludwig argues that defense counsel was ineffective for failing to object to the limiting instruction. "To prevail on a claim of ineffective assistance of counsel, counsel's representation must have been deficient, and the deficient representation must have prejudiced the defendant." State v. Aho, 137 Wn.2d 736, 745, 975 P.2d 512 (1999); Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "To establish ineffective representation, the defendant must show that counsel's performance fell below an objective standard of reasonableness." State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). "[S]crutiny of counsel's performance is highly deferential and courts will indulge in a strong presumption of reasonableness." State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). "To establish prejudice, a defendant must show that but for counsel's performance, the result would have been

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.30, at 180 (3d ed. 2008) (WPIC) states: "Certain evidence has been admitted in this case for only a limited purpose. This [evidence consists of _____ and] may be considered by you only for the purpose of _____. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation."

different." McNeal, 145 Wn.2d at 362. Failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim. Strickland, 466 U.S. at 700.

Ludwig argues that defense counsel's failure to object to the instruction, which was based on a statute that was found unconstitutional over a year before trial, failed to limit the evidence to its proper purpose and was clearly deficient. Ludwig further argues he suffered prejudice because the trial court would have given a proper limiting instruction if his attorney had objected. He contends it is reasonably likely the jury would have reached a different result absent the improper instruction.

Even if we assume, without deciding, that defense counsel's failure to object to the limiting instruction constitutes deficient performance, Ludwig establishes no prejudice. Ludwig must show that, but for counsel's failure to object to the instruction, the outcome of the trial would have been different.

First, even if counsel objected, Ludwig makes no showing that the trial court would have sustained the objection. See State v. MacFarland, 127 Wn.2d 322, 337 n.4, 899 P.2d 1251 (1995) ("Absent an affirmative showing that the motion probably would have been granted, there is no showing of actual prejudice."). Second, even if the trial court had sustained defense counsel's objection and given a WPIC 5.30 instruction, the jury would have returned the same verdict given the ample evidence of guilt, summarized above. Ludwig fails to show that defense counsel's alleged deficient performance resulted in prejudice.

Community Custody

Ludwig argues that the trial court erred in imposing combined terms of incarceration and community custody that exceeded the statutory maximum for each

count. "A trial court may only impose a sentence which is authorized by statute." State v. Barnett, 139 Wn.2d 462, 464, 987 P.2d 626 (1999). Here, Ludwig was sentenced to 90 months' incarceration on the first degree incest count and 60 months' incarceration on the second degree incest counts. In addition, Ludwig was sentenced to 36 months' community custody on each count. Thus, Ludwig was sentenced to a total of 126 months on the first degree incest count, a class B felony with a 120-month statutory maximum, and a total of 96 months on the second degree incest counts, class C felonies with a 60-month statutory maximum. RCW 9A.20.021(b), (c); RCW 9A.64.020(1)(b), (2)(b).

The State concedes that the sentence erroneously exceeded the statutory maximum for the crimes. We accept the State's concession. The proper remedy is to remand to the trial court to specify a combined term of community custody and incarceration that does not exceed the statutory maximum. State v. Land, 172 Wn. App. 593, 603, 295 P.3d 782 (2013); RCW 9.94A.701(9) ("'The term of community custody specified by this section shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021.'") (quoting RCW 9.94A.701(9)).

## CONCLUSION

Ludwig failed to establish that the alleged instructional error is a manifest constitutional error that may be reviewed for the first time on appeal. Nor has he shown prejudice resulting from defense counsel's alleged deficient performance. We therefore

affirm Ludwig's conviction but remand to the sentencing court to correct the judgment and sentence in accordance with this opinion.

_____ Fau, J.

WE CONCUR:

_____ Spearman, C.J.,        _____ Appelwick, J