IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77626-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE LUIS DIAZ ACOSTA, | ) | UNPUBLISHED OPINION |
| DOB: 01/24/1990 | ) | |
| | ) | FILED: June 10, 2019 |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Rebuttal testimony must address new material raised by the defendant's case in chief and cannot be needlessly cumulative. During Jose Luis Diaz Acosta's trial for second degree assault, the State called a rebuttal witness even though the defense's case raised no new matters, and the witness's testimony merely echoed testimony from the State's case in chief. Allowing the rebuttal witness was harmless error because of the overwhelming evidence against Diaz Acosta.

We must remand, however, because two legal financial obligations must be stricken in light of Diaz Acosta's indigence.

Therefore, we affirm in part, reverse in part, and remand.

## FACTS

Diaz Acosta and Ian Christianson drank at a nightclub on a summer night in Bellingham.[1] They left around closing time and hung out in the club's parking lot.[2] Having been drinking since nine or ten o'clock that night, Diaz Acosta needed to relieve himself.[3] He went between parked cars to shield himself from view.[4] As Diaz Acosta sought relief, Eric Sorenson and his friends returned to their cars from a night out.[5] Sorenson, believing someone was urinating on his car, approached Diaz Acosta.[6] Within a few minutes, Diaz Acosta punched Sorenson and knocked him to the pavement.[7] Sorenson suffered a basilar skull fracture, a brain bleed, and potentially permanent sensory impairments.[8]

At trial, Diaz Acosta advanced a theory of self-defense.[9] The State presented four witnesses during its case in chief who all testified Sorenson did not push or hit Diaz Acosta.[10] Only Diaz Acosta testified in his defense, and he said Sorenson pushed him and behaved aggressively.[11]

---

[1] RP (Oct. 25, 2017) at 160-61.

[2] RP (Oct. 24, 2017) at 43, 51-52.

[3] RP (Oct. 25, 2017) at 162.

[4] RP (Oct. 25, 2017) at 162-63.

[5] RP (Oct. 24, 2017) at 15.

[6] Id. at 27-29.

[7] Id. at 45.

[8] Id. at 132-33; RP (Oct. 25, 2017) at 152-53.

[9] RP (Oct. 24, 2017) at 9.

[10] Id. at 17, 29, 49, 119-20.

[11] RP (Oct. 25, 2017) at 164.

On rebuttal, the State called Christanson over Diaz Acosta's objection.[12] Christianson testified he did not see Sorenson behave aggressively or push Diaz Acosta.[13] The jury found Diaz Acosta guilty of second degree assault.[14]

Diaz Acosta appeals.

## ANALYSIS

### I. Rebuttal Testimony

Diaz Acosta argues cumulative rebuttal testimony prejudiced his trial.[15] We review a decision to admit rebuttal testimony for abuse of discretion.[16] A court abuses its discretion where its decision is made for untenable reasons, rests on untenable grounds, or is based on an erroneous view of the law.[17]

"'Rebuttal evidence is admitted to enable the plaintiff to answer new matter presented by the defense.'"[18] Although the two may overlap, rebuttal testimony should not be a reiteration of the State's case in chief.[19] Thus, rebuttal testimony

---

[12] Id. at 181-82, 185-86.

[13] Id. at 193-94.

[14] Clerk's Papers (CP) at 33.

[15] Appellant's Br. at 12-13.

[16] State v. Copeland, 130 Wn.2d 244, 288, 922 P.2d 1304 (1996).

[17] State v. Quismundo, 164 Wn.2d 499, 504, 192 P.3d 342 (2008) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

[18] State v. Swan, 114 Wn.2d 613, 652, 790 P.2d 610 (1990) (quoting State v. White, 74 Wn.2d 386, 394-95, 444 P.2d 661 (1968)).

[19] Id. at 652-53 (quoting White, 74 Wn.2d at 393-95); see State v. Epefanio, 156 Wn. App. 378, 388, 234 P.3d 253 (2010) ("The State . . . is not permitted to call and question a rebuttal witness on anything other than new matters raised by the defense.") (citing White, 74 Wn.2d at 395); see also ER 403 (Courts may exclude "needless presentation of cumulative evidence.").

must "answer new matter raised by the defense"[20] and should not be needlessly cumulative.[21] Because Diaz Acosta was the sole defense witness, the issue is whether his testimony raised any new matters for the State to rebut.

Diaz Acosta's testimony described the evening. He and Christianson drank at the Underground, "just partying," and left around closing time.[22] While Diaz Acosta urinated next to an orange car, Sorenson approached angrily and shoved him.[23] Diaz Acosta steadied himself, and Sorenson shoved him again.[24] Then Sorenson "just rushed me again, just swearing, just pissed off, man, . . . [a]nd just [a] split second, man, unfortunately, [I] just defended myself."[25] Diaz Acosta said he "[a]bsolutely" feared for his safety before punching Sorenson.[26]

The State's case in chief included a truncated version of Diaz Acosta's version of events. The State called the arresting officer to read into the record a statement Diaz-Garcia wrote at the police station after his arrest:

> We were drinking, having a good time, playing pool, drinking[.]
> [T]ime came to bail out and we got confronted by a drunk individual[,]
> and he pushed me twice so I defended myself like the constitutional
> rights explains. He got str[uck] once, and I was told to leave the
> premises![27]

---

[20] White, 74 Wn.2d at 394.

[21] ER 403.

[22] RP (Oct. 25, 2017) at 160-62.

[23] Id. at 163-64.

[24] Id. at 164.

[25] Id.

[26] Id. at 168-69.

[27] RP (Oct. 24, 2017) at 93.

The officer also mentioned Christianson and that he was with Diaz Acosta.[28]

In addition, the State called four eyewitnesses who testified that Sorenson did not push Diaz Acosta. The first two witnesses were friends of Sorenson's and had been out on the town with him that night.[29] They denied Sorenson did anything aggressive before Diaz Acosta punched him.[30] They specifically denied Sorenson pushed or hit Diaz Acosta.[31] The State also called two witnesses unconnected to the victim or the defendant. One was a bouncer guarding the door for a nightclub across the street from the parking lot, and the other was a teenager who had recently completed his shift at a nearby diner.[32] They too testified that Sorenson did not push Diaz Acosta.[33] They also said Diaz Acosta "sucker punched" Sorenson.[34]

During rebuttal, the State asked Christianson four questions about whether anyone pushed, punched, or had any physical contact with Diaz Acosta before the punch.[35] Christianson answered "no" or "nope" to those questions, and he opined, "I didn't feel like it was self-defense or any of that."[36]

---

[28] Id. at 94.

[29] Id. at 13-14, 24-25.

[30] Id. at 17, 29.

[31] Id.

[32] Id. at 41-42, 117-18.

[33] Id. at 49, 120.

[34] Id. at 102, 122.

[35] RP (Oct. 25, 2017) at 193-94.

[36] Id. at 194.

5

The State argues Christianson's testimony "addressed a new issue—whether [the] Defendant's testimony of his interaction with Sorenson was accurate."[37] But the record does not support this contention. The State called a police officer to read Diaz Acosta's statement, which is essentially a summary of his self-defense theory. The State preemptively undermined that theory by calling four witnesses who each testified Diaz Acosta struck without provocation. Although Diaz Acosta spoke in detail about his self-defense theory, his testimony merely fleshed out an existing matter. It did not raise a new matter.

Diaz Acosta analogizes this case to State v. Fitzgerald.[38] In Fitzgerald, this court held the trial court abused its discretion by admitting cumulative rebuttal evidence.[39] An adoptive father was accused of two counts of statutory rape against children adopted from the same orphanage.[40] Both orphans testified during the State's case in chief, and both said the father molested and raped them both before their adoption from India and afterwards in Washington.[41] On rebuttal, the State called a third orphan who testified that she saw the father molest and rape the first witness in India.[42] Because the testimony was cumulative with testimony from the State's case in chief about prior bad acts, the court erred by

---

[37] Resp't's Br. at 10.

[38] 39 Wn. App. 652, 694 P.2d 1117 (1985).

[39] Id. at 662.

[40] Id. at 654.

[41] Id.

[42] Id. at 660, 662.

admitting rebuttal testimony for this purpose.[43] Similarly here, Christianson's testimony merely recounted the same facts about the same incident testified about during the State's case in chief, albeit from Christianson's perspective.

The State argues on appeal, as it did to the trial court, Christianson's testimony was not cumulative because "he had a unique perspective as to the events as opposed to the witnesses who have already testified."[44]

But Christianson's testimony was needlessly cumulative. He stood four or five feet behind Diaz Acosta during the moments preceding the punch.[45] Diaz Acosta's body obstructed his view of anything Sorenson did, and he did not hear anything the men said to each other.[46] By contrast, a witness who testified during the State's case in chief saw the same events from approximately seven feet away with nothing obstructing her view.[47] She testified about what Sorenson and Diaz Acosta said and did before the punch.[48] Christianson's perspective did not contribute anything new to the jury's understanding and, accordingly, had little probative value. Because it had little probative value and only echoed earlier testimony, it was needlessly cumulative.

---

[43] Id. at 662.

[44] RP (Oct. 25, 2017) at 187; Resp't's Br. at 12.

[45] RP (Oct. 25, 2017) at 201.

[46] Id. at 200-02.

[47] RP (Oct. 24, 2017 ) at 38, 40.

[48] Id. at 35-39.

The State both raised and undermined Diaz Acosta's self-defense theory during its case in chief, and his testimony did not raise a new matter the State had to rebut. Even if it had, Christianson's limited perspective meant his testimony was needlessly cumulative. Accordingly, the court abused its discretion by admitting Christianson's rebuttal testimony.

When considering if the erroneous admission of evidence prejudiced the defendant, we ask "'whether within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'"[49]

Diaz Acosta points to State v. Lampshire[50] to show he suffered prejudice from the erroneous admission of improper rebuttal testimony alone.[51] But Lampshire does not support his proposition. In that case, "the cumulative effect of the cited errors" prejudiced the defendant "where the result hinged upon the jury's belief of the testimony of the witnesses."[52] In addition to admitting cumulative rebuttal testimony, the trial court allowed improper cross-examination questions and improperly commented on a witness's credibility.[53] All three errors undermined the credibility of defense witnesses.

---

[49] State v. Gunderson, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014) (internal quotation marks omitted) (quoting State v. Gresham, 173 Wn.2d 405, 433, 269 P.3d 207 (2012)).

[50] 74 Wn.2d 888, 447 P.2d 727 (1968).

[51] Appellant's Br. at 17.

[52] Lampshire, 74 Wn.2d at 894.

[53] Id. at 891-94.

Here, Diaz Acosta alleges only one prejudicial error. And he does not explain how otherwise unobjectionable testimony becomes prejudicial in a brief two-day trial because it was presented in rebuttal rather than a few hours earlier during the State's case in chief. Although the prosecutor mentioned Christianson's testimony four times during his closing argument,[54] Christianson significantly undercut his own credibility by admitting he could not hear or directly see Diaz Acosta and Sorenson interact before the punch.[55] Even without self-impeachment, Christianson's testimony was not unduly emphasized or essential for the State's argument:

> [E]very witness, aside from the defendant . . . was there from four distinct vantage points: [Sorenson's friends] behind [Sorenson]; [Christianson] behind the defendant; the bouncer across the street; and the [teenager] elsewhere in the parking lot. Four distinct vantage points, not a single witness indicated that this was anything other than a sucker punch, an assault, not a fight, not a reaction in self-defense, but an assault.
>
> . . . .
>
> As [Christianson] stated, as all the witnesses stated, there is no evidence of self-defense. None. And the defendant's testimony, I submit to you, cannot be found credible in light of all the other witnesses, all of these witnesses who are not connected to one another in any way.[56]

Only Diaz Acosta testified Sorenson pushed him. Four witnesses testified during the State's case in chief that Diaz Acosta punched Sorenson without

---

[54] RP (Oct. 25, 2017) at 222, 226-27, 228.

[55] Id. at 200-02.

[56] Id. at 226, 228.

provocation. Two of those four had no connection to either the aggressor or the victim. Each witness's testimony corroborated the others'. It is improbable the outcome of the trial would have changed without the error. Accordingly, error was harmless.

## II. Legal Financial Obligations

Diaz Acosta argues the court erred by imposing a $250 jury demand fee and a $200 criminal filing fee without first inquiring about his ability to pay.[57] The State concedes the court erred by imposing the jury demand fee and asks that it be stricken.[58] It does not address the criminal filing fee. But State v. Ramirez[59] states plainly that the criminal filing fee should also be stricken where the fee was imposed prior to the 2018 amendment of RCW 36.18.020(2)(h)[60] and a defendant's appeal was pending after it became effective. This appeal was pending when the law went into effect, and Diaz Acosta is indigent.[61] Under Ramirez, the criminal filing fee must be stricken as well, and the court may strike the fees without a resentencing hearing because it already found Diaz Acosta indigent.[62]

---

[57] Appellant's Br. at 17, 21.

[58] Resp't's Br. at 12.

[59] 191 Wn.2d 732, 749, 426 P.3d 714 (2018).

[60] See LAWS OF 2018, ch. 269, § 17.

[61] CP at 69-70.

[62] 191 Wn.2d at 749-50.

Therefore, we affirm in part, reverse in part, and remand so the jury demand fee and criminal filing fee may be stricken.

WE CONCUR:

Andrus, J.